SWOFFORD BROTHERS DRY GOODS COMPANY, Appellant and Respondent, v. E. M. RANDOLPH, Appellant and Respondent.

Kansas City Court of Appeals, November 21, 1910.

1. **BILLS AND NOTES: Deeds of Trust: Absolute Assignment: Collateral Security.** To secure a note for $3200, defendant's brother made an assignment to plaintiff, as collateral security, of another note for $6000 also made by defendant and secured by deed of trust. This assignment provided that "If said $3200 note is not paid at maturity, then the $6000 note and deed of trust become the absolute property of plaintiff." Upon defendant's default on the $3200 note, plaintiff foreclosed, bought in the land, for $685.50 net and credited this amount on the note. Plaintiff subsequently sold this land for an amount, the net proceeds of which were more than sufficient to pay the $3200 note. Plaintiff, refused to account for these proceeds, and brought suit for the balance on the note, claiming that the only credit thereon to which defendant was entitled was the net amount the land brought at the foreclosure sale. *Held,* that defendant was entitled to credit for the amount paid by plaintiff for the land at the foreclosure sale under the deed of trust, plus the amount of rents received while in possession.

2. **EQUITY: Forfeitures: ———.** If the collateral note was to become the absolute property of plaintiff, in the event the principal note was not paid when due, then the failure of defendant to make payment at that time would operate as a forfeiture of the collateral note. But, the rule is that equity never

151 App.—25

declares a forfeiture, but when it does interfere in a case of forfeiture, it is only to relieve against it.

3. DEEDS OF TRUST: Agreement to Postpone Sale: Merger. There was a previous oral agreement that, in the event of default, a sale under the deed of trust was to be postponed for one year after the principal note for $3200 became due. *Held,* that this oral agreement was merged in the subsequent written agreement to hold as collateral the $6000 note, and the written lease at a purely nominal rental of the land named in the deed of trust.

4. DEEDS OF TRUST: Foreclosure Sale: Trustee Ex Maleficio. The plaintiff, who was holder of the collateral note, had a legal right to foreclose, and by so doing, the sale being free from fraud, did not become a trustee *ex maleficio* by buying in the land, and was therefore entitled to compensation for his advances, disbursements and the reasonable value of his services.

5. EVIDENCE: Trustee's Book of Accounts. Plaintiff kept books which showed its disbursements in respect to the land bought at the foreclosure sale. Plaintiff also introduced other competent evidence, showing that said books were substantially correct. Defendant offered no countervailing evidence. *Held,* that the admission in evidence of copies of entries from said books was not an error, which was important, although said books were not strictly books of account.

Appeal from Linn Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Bresnehen & West* for plaintiff.

*F. H. McCullough* for defendant.

BROADDUS, P. J.—This action is founded upon a promissory note. The answer admits its execution and sets up certain equities and asks for an accounting and judgment over against the plaintiff.

The court appointed the Hon. D. M. Wilson, referee, who heard the case and made a finding. As his report states the issues raised by the pleadings and

finding of facts and his conclusions thereon we adopt it as suitable statement of the case. It is as follows:

"This is a suit on a promissory note for $3200, given by the defendant and his brother, Thomas J. Randolph to the plaintiff. The note is dated May 11, 1896, is due on or before March 16, 1897, and bears eight per cent compound interest from date. There is a credit on the note of May 17, 1897, of $685.50, proceeds of foreclosure of deed of trust securing collateral note. Judgment is prayed for the balance of the note and interest. The petition was filed in the Linn Circuit Court, at Linneus, April 13, 1905. The suit was at the succeeding December term, transferred by stipulation to Brookfield.

"The second amended answer, filed at the February term, 1906, admits the execution of the note but denies generally the other allegations of the petition. It also contains a special plea setting up as a defense and counterclaim substantially this same state of facts. That the $3200 note was given for a balance due plaintiff on a stock of goods bought of it. That this stock was traded by defendant to one Hart for 340 acres of land in Carroll county, Missouri, that Hart made the deed to defendant, and gave his brother, Thomas, his note for $6000 secured by deed of trust on the land. That plaintiff was to take the $6000 note and deed of trust as collateral security, and that defendant was to deliver to plaintiff possession of the land the 1st of March, 1897. That it was agreed that plaintiff should sell the land and pay off the first deed of trust for $5000 and accrued interest, the $3200 note and the reasonable expenses of sale. That the payers in the $3200 note should be bound no further than the amount realized exceeded the aggregate amount of the two notes and expenses, the surplus together with the rents and profits of the land was to be accounted for to defendant. That this agreement was fully carried out on defendant's part. It is further alleged that

plaintiff, with intent to defraud defendant out of his equity in the land, on the maturing of the $3200 note, foreclosed the $6000 deed of trust, causing the land to be sold by the sheriff, without notice to Wren, the trustee, on May 17, 1897, at which sale the defendant did not appear as a bidder, relying on the agreement of plaintiff. That at the sale, the land was bought by plaintiff for $725 subject to the prior deed of trust, and net proceeds of sale, $685.50 credited on the note. That at the time of the trustee's sale the land was reasonably worth $17,000, and that plaintiff should account to defendant for $8544. That plaintiff held the land for several years receiving rent to the total amount of $500 and then sold the land for $8443, and that plaintiff should also account for these moneys. The answer concluded with praying for an accounting, the appointment of a referee, if necessary, etc.

"The replication filed on the hearing before me, admits the receipt, on May 11, 1896, of the $6000 note and deed of trust as collateral security for the note sued on, the foreclosure under that deed of trust and the purchase at said sale of the land by the plaintiff, subject to the $5000 deed of trust, and denies generally all other allegations of new matter set up on the answer. "I find the facts in the case to be as follows: 'So far as the evidence discloses the business relations between the parties to this suit began in 1895. In that year the plaintiff sold or traded to defendant a stock of goods valued at over $18,000, for land valued at about $10,000. For the difference the defendant gave plaintiff his notes. In February, 1896, the defendant traded his stock of goods to one Hart for 340 acres of land in Carroll County, Missouri. The deed from Hart for the land bears date of February 24, 1896, was filed for record March 16, 1896, conveys the land for an express consideration of $17,000 and is subject to a deed of trust to one Timmons for $5000, due No-

vember 25, 1899, which the grantee assumes and agrees to pay as part consideration for the land.

"Thomas J. Randolph, now deceased, was a brother of the defendant and had an interest in the store, and after the trade, an interest in the land. A settlement took place between him and the defendant, and on March 16, 1896, the defendant gave his brother his note for $6000, due one year after date with eight per cent compound interest from date, and to secure it gave a second deed of trust on the land. This deed of trust was filed for record April 6, 1896.

"A dispute arose between plaintiff and defendant over the notes given in 1896 and finally the plaintiff brought suit in the Linn Circuit Court on them, but before trial, the plaintiff, through its agent and employee, John P. Hanna, adjusted the difference between it and the defendant, and the defendant gave the company his note for $3200 in full settlement. This is the note sued on. It is dated May 11, 1896, is due on or before March 16, 1897, the date of the maturity of the $6000 note, and bears eight per cent compound interest from date. It is also signed by his brother, T. J. Randolph.

"How long it took to adjust the difference between plaintiff and defendant just referred to does not appear, but in addition to the $3200 note the defendant gave plaintiff a lease, duly acknowledged, on the 340 acres, a paper called by counsel for defendant a receipt, and by counsel for plaintiff, a contract, in relation to the $6000 note and deed of trust, which was turned over to plaintiff by T. J. Randolph as collateral security, and a deed of assignment of the $6000 note and deed of trust by T. J. Randolph to the plaintiff.

"The lease recites that for one dollar to be paid March 1, 1898, the defendant leases to plaintiff the

340 acres for one year beginning on the first day of March, 1897; it further provides that if the defendant shall on or before March 16, 1897, pay off and discharge the $3200 note then the lease shall become null and void after March 16, 1897, otherwise to remain in full force and effect. Immediately following this provision and concluding the lease there is written in with pen and ink this sentence. "Said note is also secured by note and deed of trust for $6000, which is held as collateral security."

"There are two copies of the receipt or contract, more properly termed the receipt and contract. Both of these copies were written on the typewriter at the same time. One copy was held by the defendant, and at the trial was offered and read in evidence by him. It is signed 'Swofford Bros. Dry Goods Company by John P. Hanna, Agt.' and bears no other signature. The other, a carbon copy, was held by the plaintiff, and on the trial was offered and read in evidence by it. It is signed 'E. M. Randolph, T. J. Randolph, and Swofford Bros. D. G. Co., J. P. Hanna, Agt.' The first of these duplicates is a receipt acknowledging the receipt from T. J. Randolph of the $6000 note and deed of trust by plaintiff, stating that it held the note and deed of trust as collateral security for the payment of the $6000 note, and deed of trust as collateral security for the payment of the $3200 note, and that upon the full payment of the latter note at maturity (on or before March 16, 1897), the $6000 note and deed of trust were to be surrendered to T. J. Randolph. Then follows this sentence and paragraph: If said $3200 note is not paid at maturity then the $6000 note and deed of trust become the absolute property of said Swofford Brothers Dry Goods Company.

"The deed of assignment recites in formal language the assignment of the $6000 note and deed of trust securing it, by T. J. Randolph to the plaintiff, and recites that the assignment is made to secure the

payment of the $3200 note. It was filed for record May 12, 1896.

"The defendant did not keep the interest paid up on the Timmons deed of trust, the payment of which he had assumed, and the land was advertised to sell under it January 2, 1897. Before the day of sale the interest and costs were paid by the plaintiff.

"February 22d, the law firm of Lozier and Morris of Carrollton, representing the plaintiff, wrote to Mr. Wren, the trustee in the $6000 deed of trust to know in case the $6000 deed of trust was foreclosed whether he desired to act as trustee. They received an answer to their letter dated February 24th, 'that if order closed when due to advertise and he would attend to it.' They afterwards received a letter from Mr. Wren, dated March 24, 1897, saying that it was uncertain as to his being able to be there, and that they had better get the sheriff to attend to it.

"The $3200 note not being paid at maturity, the land was advertised under the $6000 deed of trust by the sheriff of Carroll county and sold by him on the 17th day of May, 1897, to the plaintiff for $725. The net proceeds of the sale, $685.50 was credited of that date on both notes, and a trustee's deed was on the same day made to the plaintiff.

"Immediately following the sale, the land was placed by plaintiff in charge of Lozier and Morris, who rented it for several years and finally sold it. The land consisted of two tracts or farms, known as the Bluff farm and the Bottom land. The Bluff farm consisted of 100 acres, the bottom land of 240 acres. It might be well to state here, that although the land has all along been spoken of as containing 340 acres, in point of fact the bottom land was fractional and contained only 222 acres instead of 240 acres, as it would have done had the quarter sections been full.

"The bottom land was sold to J. O. Shinn, August 11, 1900, for $4350; a part of the Bluff farm to

Harvey Irwin, May 19, 1902, for $900; and the remaining portion of that farm to David Swank, October 2, 1902, for $3293.75, making the gross proceeds of the land $8543.75.

"A number of witnesses testified as to the value of these different pieces of land, also as to their rental value. Some of these witnesses had lived for years near the land, and were farmers, others were real estate men, and all seemed well acquainted with values of real estate. I am of the opinion that each of these parcels of land was sold by the plaintiff at and for its reasonable market value and I so find.

"As just stated, the bottom land was sold for $4350. Of this $3150 was applied on the Timmons note; $17.08 for taxes; $575 for the other expenses and $50 paid Lozier and Morris for commission, making a total of $3203.33, and leaving a balance of $1146.67, net proceeds of sale, which were received by plaintiff August 11, 1900. Twenty-two and one-half acres of the Bluff farm was sold for $900. The expenses attending this sale were $75, making the net proceeds of this sale $825, which were received by the plaintiff May 19, 1902.

"Seventy-seven and one-half acres, the remainder of the Bluff farm was sold for $3293.75. Of this $2104 was paid Timmons, being balance due on his note. The expenses, including taxes, abstract fees and commission were $96.87, leaving the net proceeds of the sale $1092.88, which together with $3.50 return premium on insurance, making a total of $1096.38 was received by the plaintiff October 7, 1902.

"The land, as has been stated, was sold under the $6000 deed of trust on May 17, 1897, and from that time on the land was in the possession and under the control of plaintiff. Prior to the sale, as shown by its Exhibit 'D,' the plaintiff paid $367 to stop the sale under the Timmons deed of trust, being the accrued interest and expenses of advertising. It paid out for

repairs, a few days after the sale $63.25 and also $2.50 for recording the $6000 deed of trust and the trustees deed, making a total outlay of $432.75. In February, 1897, it received $300 rent, leaving a balance overpaid by plaintiff of $132.75.

"Beginning with July, 1897, the plaintiff paid out for interest on the Timmons loan, taxes, repairs, insurance and seed, as shown by its exhibit 'E,' in which all expenses and receipts are itemized, the sum of $1538.54, and received $1425.64, showing the expenses during this time to have been $112.90 more than the receipts. And from the two exhibits, 'D' and 'E,' it appears that the total amount received by plaintiff was $1725.64, while it paid out a total of $1971.29, showing the expenditures to have been $245.65 more than the receipts.

"It may perhaps seem strange that 340 acres of land lying from three and a half to four miles west of Carrollton, and which sold for upwards of $8000 could not pay its own expenses, and had to be rented at a loss. In answer to this it is said that 240 acres of the land was bottom land and was subject to overflow, and had to be rented for crop rent, and from it was realized during the time plaintiff had it practically nothing. The accounts are intermixed; they are kept by a reliable business firm, which looked upon the property as its own; then defendant who looked upon the land as his, and as held by the plaintiff in trust for him, demanded no account, and no attempt has been made before me to impeach the accuracy of the accounts. I see no valid reason why I should not accept them as correct, and I therefore find, that prior to the sale of all the land, the plaintiff had received $1725.64 and had paid out $1971.29, and had paid out $245.65 more than it had received.

"As I view this case, the evidence of the defendant and of Mr. Hanna, as to the interlineation of the words in the receipt and contract, how those words

came to be written in, and the effect the interlineation was intended to have, is immaterial.

"The case, in my judgment, would be decided upon broad equitable principles. As I read the lease, the receipt and contract, and the assignment, the $6000 note and deed of trust was held by the plaintiff as collateral security for the $3200 note, both before and after the latter's maturity. The $6000 note ought not to and in equity, never did become the absolute property of plaintiff. The plaintiff did have the right to foreclose the $6000 deed of trust upon the failure of the defendant to pay the $3200 note at its maturity, and it was clearly acting within its rights, when by its direction, the sheriff advertised and sold. By its purchase of the land at the foreclosure sale the defendant's equity of redemption was extinguished, and the land became the plaintiff's, but it was also its duty to account to the defendant for the rents, less the expenses and upon the sale of the land to apply the net proceeds as credits on the $3200 note. To hold under the facts in this case, that the $6000 note became the absolute property of plaintiff; that by its purchase at the foreclosure sale it became the absolute owner of the land; that all equity and good conscience required it was to place a credit of $685.50 on the $3200 note of the proper date; that plaintiff was entitled to keep what it received from the sale of the land and in addition to that, can now recover from the defendant the $3200 note, with the credit thereon, would be unconscionable and unjust. The plaintiff is entitled to its debts and no more. It is entitled to the $3200 with eight per cent compound interest thereon from May 11, 1896, to be credited with the net proceeds of the sales of the land at the respective dates when received, that is, to the following credits: August 11, 1900, $1146.67; May 19, 1902, $825; and October 7, 1902, $1096.38. The credit of $685.50 on the note should be disregarded. It is not a proper item of

credit. The difference between plaintiff's bid, $725, and the amount credited on the note, $685.50, viz.: $39.50, however, represents what money the plaintiff actually paid out at the sale, and this amount should be added to the $245.65 also expended by it, making a total of $285.15, which amount the defendant also owes plaintiff.

"The note is for $3200, is dated May 11, 1896, and bears 8 per cent compound interest from date. It is entitled to three credits, as follows: August 11, 1900, to $1146.67; May 19, 1902, to $825; and October 7, 1902, to $1096.38. A computation of the note on this basis computing the interest to the time of first payment, deducting that payment from the amount of the note, then computing the interest on the remainder to the date of the second payment, and subtracting the second payment from that amount, then compute interest on the remainder up to the time of the last payment and deducting that payment from that amount, and then computing interest on the remainder up to the 15th of February, 1909, the first day of the February term of the Brookfield Court, shows that the note at that time would amount to $3587.46. In addition to this amount the plaintiff is entitled to $285.15 for money expended by him while holding the land, making a total amount due plaintiff by defendant on February 15, 1909, of $3872.61.

"I therefore recommend that judgment be entered by the court, as of February 15, 1909, in favor of the plaintiff and against the defendant for the sum of $3872.61. I further recommend that the judgment be so framed, that upon the payment of that sum, with interest if not paid on February 15, 1909, the plaintiff be required to deliver up the $6000 note."

In due time both parties filed exceptions to the referee's report which upon hearing the court overruled and entered judgment upon the finding and both

appeal from the action of the court and have filed in this court a joint abstract of the record.

The grounds of plaintiff's exceptions are:

"First. Because the referee erred in holding that the defendant was entitled to an accounting of the money received and paid out on account of the lands described in the petition after the foreclosure of the $6000 deed of trust, dated March 16, 1896.

"Second. Because the referee erred in holding that the defendant is entitled to credit on the note sued on for the net amounts realized by plaintiff upon the sales of said land made after the foreclosure of said deed of trust.

"Third. Because the referee erred in holding that the defendant had any interest whatever in said lands after the foreclosure of said deed of trust."

The exceptions filed by defendant are as follows:

"First. Because the referee erred in finding and holding that the lands in question were sold by plaintiff for the reasonable market value thereof, when in truth and in fact, the evidence shows and proves that said lands were sold for much less than the market value thereof.

"Second. Because the referee erred in finding and holding that the plaintiff had the right to make the trustee's sale of the lands in question on May 17, 1897, and that defendant's equity of redemption was thereby extinguished and the lands became plaintiffs.

"Third. Because the referee erred in finding and holding that the plaintiff had received and ought to account for the sum of only $1725.64, as the rental value of the lands in question for the years 1897, 1899, 1900, 1901 and 1902, when the greater weight of the evidence in the cause shows and proves that the true rental value of said lands was the sum of about $4000."

The fourth objection is that the referee erred in admitting certain incompetent evidence, and the fifth objection is to the same purpose. The sixth objection

goes to the weight of the evidence and the seventh is but a repetition of former objections.

The plaintiff insists that they are not only entitled to have a judgment on the note declared on for $3200, but also should not be required to account for the net proceeds of the $6000 note, assigned to them as collateral security for the payment of the former. Ordinarily in such cases the holder of collateral security is obligated to apply the net proceeds thereof if he had converted it into money, to the payment of the original debt and if the proceeds exceeds the amount of such debts he holds the surplus as the trustee of the debtor to be paid over to him on demand. According to the terms of the assignment of said note the plaintiff took it with the implied agreement that in the event the principal debt was not paid when due they would convert the security into money, and credit the principal debt with the proceeds and pay over the net balance, if any, to the defendant.

But it is contended that notwithstanding the terms of the assignment that the same was to operate as collateral security, the assignment further by its terms provided if the debt was not paid when due the collateral note was to "become absolute property" of plaintiff and such being the fact the plaintiff was not obligated to return to defendant such surplus proceeds.

If the collateral note was to become the absolute property of plaintiff, if the principal note was not paid when due, the failure of defendant to make payment at that time would operate as a forfeiture of the collateral note. We are asked to make this forfeiture good. That is to say, plaintiff not only asks that the debt be paid, but also that defendant forfeit to it the net proceeds of the $6000 collateral note according to the strict terms of the contract. It is said: "Wherever a penalty or forfeiture is used merely to secure the payment of a debt, or the performance of

some act, or the enjoyment of some right or benefit, equity, considering the payment, or performance, or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture by awarding compensation instead thereof, proportionate to the damages actually resulting from the non-payment.'' . . . [Pomeroy's Eq. Jurisprudence (3 Ed.), vol. 1, sec. 433.] This is a clear statement of the equity law governing the case. In a recent case the Supreme Court of this state laid down the broad doctrine that a court of equity never declares a forfeiture, but on the contrary when it does interfere in a case of forfeiture it is only to relieve against it. [Moberly v. Trenton, 181 Mo. 637.] In an early day of our jurisprudence, Judge Scott said, a penalty in a court of equity was, ''a thing never allowed.'' [Watts v. Watts, 11 Mo. 547.] Such being clearly the equity of the case it follows that all the exceptions taken by plaintiff to report of the referee were properly overruled and that they have no just cause to complain of the judgment of the court.

We are not called upon to consider questions raised by defendant on his appeal relating to a preponderance of the evidence, such as the findings of the referee as to the reasonable market value of the lands and their rental value. These were matters peculiarly resting within the discretion of the trial judge, and are not proper subjects for the consideration of this court.

We believe the sale of lands by the sheriff instead of by the trustee named in the deed of trust was authorized by the refusal of the latter to act. The case is similar to that of Chase v. Williams, 74 Mo. 429.

And we are satisfied that under the terms of the assignment and lease both executed at the same time, on May 11, 1899, and which are to be construed as one instrument, containing all prior and contemporaneous agreements, that there could be no verbal binding agreement that the sale of the land should be postponed for one year after the date when the note became due and for default in payment of which the trustee was authorized to close the said deed of trust.

Defendant claims that because of said verbal agreement he did not attend the sale and bid for the land so as to make it realize more. But we cannot see what that has to do with the question here, as it is not the amount for which the plaintiff's bid on the land that is in controversy, but the amount he sold or should have sold it for. The plaintiff having the legal right as holder of the collateral note to foreclose the deed of trust when due it did not by so doing become trustee *ex maleficio*. Equity under such circumstances will allow the trustee compensation for his advances, his disbursements and also for the reasonable value of his services. [Edwards v. Gottschalk, 25 Mo. App. 549.] There was therefore no error in allowing plaintiff's claims for expenses incurred while in charge of the lands.

The plaintiff in order to prove these claims introduced copies of entries in its books, the production of the books being waived. This is alleged as error. They do not stand upon the same footing as books kept by merchants with their customers, but were kept by plaintiff for its own use and we doubt that they were competent evidence as between the plaintiff and defendant. But there was other competent evidence that they were correct except as to one or two small items and as defendant did not offer any countervailing evidence we do not regard the error, if it was one that ought to be considered important.

The defendant by asking for an accounting virtually waived his right to object to the legality of the foreclosure sale and as the finding of the referee is that the sale made by plaintiff was free from fraud and that the land realized its full value, he, the defendant, is in no position to require of them more than they have profited by the transaction. Having asked equity he must do equity.

The defendant moved the court to tax all the cost of the case against the plaintiff which the court refused. But the court did in fact apportion the cost upon the hearing before the referee equally between plaintiff and defendant, but taxed the other costs of the case against defendant. Defendant was not the prevailing party in whose favor costs are taxed within the meaning of section 1547, Revised Statutes 1899. The case of Hankins v. Nowland, 53 Mo. 328, has no application to the question. We think the court was exceedingly liberal to defendant in the taxation of the costs and that he has no cause to complain of that score.

Upon the whole we feel that the case was well tried and that substantial justice was done. Affirmed. All concur.

## ON REHEARING.

An opinion was rendered in this case on the 10th day of May, 1910. On motion of defendant, a rehearing was had on the ground that the statement of facts were not strictly accurate. The statement had reference to proof of plaintiff in the accounting, for his advances, his disbursements and for the value of his services.

The statement is as follows: "The plaintiff in order to prove those claims introduced copies of entries in its books, the production of the books being waived. This is alleged as error. They do not stand upon the same footing as books kept by merchants with their customers, but were kept by plaintiff for

its own use and we doubt that they were competent evidence as between the plaintiff and defendant. But there was other evidence that they were correct; except as to one or two small items, and as defendant did not offer any countervailing evidence we do not regard the error, if it was one, that ought to be considered important."

Upon further examination of the record we find that there was other evidence besides plaintiff's book entries going to show the advances and disbursements made by the plaintiff while dealing with the land, while there was no satisfactory contradictory evidence offered on the part of the defendant. We think under the circumstances the statement was substantially correct. The statement of the referee is that "no attempt has been made before me to impeach the accuracy of the account."

However, it is still insisted by the defendant that plaintiff should be charged with the amount it received for the land after it had bid it in at the sale under the trust deed.

The referee found that the land sold at its full value at said trustee's sale; if so, plaintiff should be charged with that amount only, plus amount of rents received while in possession. That we held and still hold to be the true measure of its accounting. Had plaintiff's act in causing the land to be sold under the trustee's deed, been wrongful, perhaps the rule invoked by defendant that it should be charged with the amount it received at said subsequent sale ought to be applied. But as we have seen the sale was free from fraud, and under such circumstances, the plaintiff's office of trustee ceases when it accounts for the money received at the sale under said deed of trust, and for rents, less expenses and disbursements, etc. We adhere to our former opinion. Affirmed. All concur.