William N. SMITH and Margaret Jean Smith, Plaintiffs-Appellants,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Ray J. McGuire, McCue-McGuire Mortgage Company, a corporation, and McCue-McGuire Real Estate, Inc., a corporation, and George Hamm, Defendants-Respondents.

No. 54099.

Supreme Court of Missouri, Division No. 2.

Jan. 12, 1970.

Alder & Rixner, John J. Alder, Shawnee Mission, Kan., Wiley W. Morrison, Raytown, for plaintiffs-appellants.

William H. Sanders, William C. Nulton, Henry G. Eager, Charles L. House, Kansas City, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, of counsel, for respondents.

FINCH, Judge.

This is an equity suit by mortgagors in a deed of trust who sought to set aside a trustee's deed given to the purchaser at a foreclosure sale and to redeem from that sale. The trial court entered judgment in favor of defendants and plaintiffs have appealed. We have jurisdiction because title to real estate is involved. We affirm.

In our review of a case such as this, we do not disturb the findings and judgment of the trial court unless clearly erroneous. Supreme Court Rule 73.01(d), V.A.M.R.; Pope v. Cox, Mo., 417 S.W.2d 929. The transcript in this case exceeds one thousand pages and there are many exhibits, and it would serve no useful purpose for us to detail all of the evidence and the various conflicts therein. We have reviewed all of that evidence and have concluded that the findings of the trial judge are supported and are not clearly erroneous. We recite the evidence only to the extent necessary to explain that conclusion.

On April 6, 1965, plaintiffs borrowed $12,000 from defendant Equitable. Their note in that amount was payable in monthly installments of $113.28 and was secured by a first deed of trust on their residence

property at 836 Westover Road in Kansas City. The note specifically incorporated all of the terms of the deed of trust. These included a provision that, in the event of default, all of the indebtedness, at the election of the holder of the note, should become due and payable, and that notice of such election to the mortgagor was waived.

In his testimony, Mr. Smith, one of the plaintiffs, said of himself that "he had been the worst credit risk in the world and caused them all kinds of problems." Only three of the first twenty-five installments accruing were paid on time. Equitable sent numerous notices of default. On April 14, 1966, it declared the entire balance due and informed plaintiffs by letter that foreclosure would follow if the default was not cured within ten days. Plaintiffs paid up within that time.

On September 23, 1966, plaintiffs again were delinquent. An attorney for Equitable wrote plaintiffs of acceleration of the note and warned of foreclosure. Payments were not brought up to date, and on November 28, 1966, the attorney mailed to plaintiffs a notice of trustee's sale set for December 22, 1966. On the day before the scheduled sale, plaintiffs cured the delinquency, bringing payments up to date and paying other costs which had been incurred such as attorney's fees, publication fees and abstracter's charges. Equitable accepted these payments, but plaintiffs were warned by Mr. Wood, residential loan manager in Kansas City for Equitable, that if any future loan delinquency occurred, foreclosure of the deed of trust would result and reinstatement would not be allowed.

On May 2, 1967, plaintiffs again were delinquent. On that date, Mr. Wood wrote them that they again had failed to comply with their contract and that the matter was being referred to Equitable's attorney with instructions to call the loan. Wood's letter stated that no further reinstatement would be permitted, and then concluded as follows:

"Since it takes several weeks for the necessary legal work to be accomplished in a foreclosure, I would suggest that you take this time to see about refinancing your loan.

"Any further communication will be through our attorney."

Plaintiff Smith thereafter talked on the telephone with Equitable's attorney, William Nulton. In a conversation on May 10, 1967, Smith stated that he would be willing to pay six months to catch up and get ahead, and he then could use that time to refinance his loan. Nulton remarked to him that this seemed to be a reasonable plan but that he had no authority to accept it. He told Smith to call Wood and discuss the proposal with him because any decision thereon would be made by Wood.

Smith did not call Wood or make contact with anyone at Equitable between May 10 and May 26. On that date, Nulton called Smith to say that he was sending a notice of trustee's sale to be held June 19. When Nulton ascertained that Smith had not contacted Wood, as he had suggested, he informed Smith that Wood had told him that the six months' proposal was not acceptable. Smith asked to meet again with Nulton, and an appointment was made for May 31, even though Nulton advised Smith that he had no authority and that any decision would be by Mr. Wood. Smith did not keep this appointment. Thereafter, on June 8, Nulton wrote Smith, sending him a copy of the foreclosure notice and advising him that notification was also being given to the Sugar Creek National Bank, holder of a second deed of trust on the same property.

Nulton next heard from Smith on June 13, when he came to Nulton's office and asked for a conference. Smith expressed concern about the approaching foreclosure. Nulton again told him that he would have to discuss that with Mr. Wood. A call to Wood's office disclosed that Wood was out of town, but Smith arranged an appointment for June 15.

On the morning of June 15, Smith talked to Wood, who refused to agree to accept a six months' payment and call off the foreclosure. At Smith's insistence, Wood did agree to call his superior in Dallas, but advised that he would not recommend the proposal to Dallas. On the next day, which was Friday, June 16, Smith called Wood's office and was advised that the Dallas office had not agreed to call off the foreclosure.

On Sunday evening, June 18, Smith called Alex Barket, President of Civic Plaza National Bank, in his first and only attempt to refinance his loan. An appointment was made for a conference on the morning of June 19. At that conference, Barket told Smith that the making of any loan would be conditioned on stopping the foreclosure sale. Barket called a man whom he knew at Equitable and offered to pay up the arrears on the note, including foreclosure expenses, but stated he would not be willing to buy at the foreclosure sale. Barket did not offer to pay off the Equitable loan, and the trial court specifically so found. The court also found that the holder of the second deed of trust did not offer to pay off Equitable's loan.

The foreclosure sale was conducted, as scheduled, on the afternoon of June 19. There was spirited bidding by several persons and the property was sold to McCue-McGuire Mortgage Company at its high bid of $16,700.

The trustee designated in the deed of trust from plaintiffs to Equitable was H. A. Lee, cashier of the Kansas City office for Equitable. His name was shown in the notice of trustee's sale, publication of which first appeared in the Daily Record on May 22, 1967. Mr. Lee retired from his employment with Equitable on June 1, 1967, and he did not handle the foreclosure sale. Instead, the sale was conducted by George G. Hamm, who was appointed as successor trustee in an instrument executed on behalf of Equitable by Mr. Wood.

Plaintiffs assert that "The principal issue is whether the non-judicial foreclosure of the DT was valid." They assert that it was invalid and that Hamm's deed was void because the factual situation did not authorize the appointment of a successor trustee.

Paragraph "Thirteenth" of the deed of trust provides, inter alia, as follows:

"In case of the death, inability, refusal to act or absence from said County wherein the said land herein described is situate of said party of the second part, or in case the mortgagee should desire for any reason to remove the party of the second part or any of his successors as trustee hereunder and to appoint a new Trustee in his place and stead, the holder of the debt hereby secured is hereby granted full power to appoint in writing a substitute Trustee for said party of the second part, and such substitute Trustee shall, when appointed, become successor to the title to the said property, and the same become vested in him in trust for the purposes and objects of these presents with all the power, duties and obligations herein conferred on the said party of the second part."

The above provision clearly gave Equitable the right to name a successor trustee in the instances enumerated therein. Acting pursuant to that provision, Mr. Wood, on behalf of Equitable, executed a written instrument which recited that Lee, by virtue of his retirement, refused to act as trustee under the deed of trust, and that consequently he was removed and George G. Hamm appointed as successor trustee, "with all the powers, duties and obligations of said original Trustee, as provided in said Deed of Trust."

Plaintiffs say that the right to remove a trustee is purely contractual and that such power must be strictly construed, citing and relying on Adams v. Boyd, 332 Mo. 484, 58 S.W.2d 704. They claim that the evidence disclosed that Lee did not refuse to act as trustee, that he would have acted

if notified and called upon, that he did not resign and that no vacancy existed. However, the trial court specifically found that Lee expressed a choice not to act, that he considered that he had resigned and that his conduct was equivalent to a refusal to act within the terms of the deed of trust.

There was testimony to support the court's conclusion. Mr. Wood talked to Lee around May 8 about his approaching retirement and inquired whether he would continue to serve as trustee in deeds of trust in which he was named. Lee expressed a preference to be relieved, saying he would be out of town some and did not know when he would be available. Wood then wrote to the New York office of Equitable concerning his conversation with Lee and a possible change in trustee. He received a reply from the legal department, dated May 18, advising that it would be satisfactory to name a Mr. Ephlin (another Equitable employee) as successor trustee on Lee's retirement. Meanwhile, a foreclosure notice providing for foreclosure sale on June 19, 1967, had been prepared in Lee's name as trustee and sent to the Daily Record for publication. Shortly after receipt of the letter from New York, but subsequent to start of the publication, Wood again talked to Lee and informed him of the letter from New York. At that time, Lee said that he no longer desired to be trustee and would like for Wood to go ahead and appoint Ephlin. Thereafter, Wood discovered that Ephlin resided in Kansas and the decision was made to appoint Hamm instead. Lee testified that he was not called upon to conduct the sale and that if notified he would have attended the sale and acted as trustee. However, he did not appear at the sale and did not communicate with anyone or do anything further with reference to the foreclosure after his conversation with Mr. Wood. The finding and conclusion by the trial court that Lee refused to act was not clearly erroneous. It is not inconsistent with the rule in Adams v. Boyd, supra, that the power to appoint a successor trustee is con-

tractual and may be exercised only when the conditions which authorize substitution exist. See Chase v. Williams, 74 Mo. 429; Swofford Bros. Dry Goods Co. v. Randolph, 151 Mo.App. 385, 132 S.W. 255.

■ Plaintiffs' next contention is that Hamm had no right to sell pursuant to the notice of sale signed and published by Lee and that his purported conveyance thereunder was void. This argument is based on the proposition that Lee was not authorized by the terms of the deed of trust to delegate his powers and duties to another, and that Hamm, not being vested with delegated authority, could not sell pursuant to Lee's published notice.

We agree that a delegation of powers and duties by Lee to Hamm as his agent would not have been permissible under the terms of the deed of trust. However, no contention is made by defendants that this is what occurred. Rather, Hamm purported to act as a duly appointed successor to Lee in the position of trustee. He stood in the shoes previously occupied by Lee, and by the express terms of the deed of trust was vested "with all the power, duties and obligations" which the instrument conferred on the original trustee. Such appointment, as previously indicated, was authorized by the terms of the deed of trust. Hence, the question is whether a successor trustee may sell under a notice published by his predecessor or whether any successor trustee must start over and publish his own notice of trustee's sale.

We find no Missouri cases on the above subject and very little authority anywhere dealing with this question. Texas has held specifically that a successor trustee may sell under a notice published by his predecessor. In Koehler v. Pioneer American Ins. Co., Tex.Civ.App., 425 S.W.2d 889, 891, the court said:

"Defendant states in his brief: 'Frankly, we believe that the most serious irregularity in connection with the sale was that * * * one substitute trustee (Edens) posted

notices that he would sell the property on July 4, 1967, and that another substitute trustee (Rouse) was than appointed on June 27, only seven days before the sale, and actually made the sale.'

"Unfortunately for defendant's 'most serious irregularity' point, the Supreme Court has held directly opposite to his position. See Tarrant Savings Association v. Lucky Homes, Inc., supra, [425 S.W.2d 889], where the court held: 'At the time notices should have been posted White was the only one authorized by the deed of trust to post them. Respondents make no attempt to show that White did not in fact post the notices. When an original trustee properly posts the notices required by law, there would be no necessity for re-posting, and the substitute trustee could have made a valid sale.'"

Other Texas cases so holding are Tarrant Savings Association v. Lucky Homes, Inc., Tex., 390 S.W.2d 473, and Gamble v. Martin, 60 Tex.Civ.App. 517, 129 S.W. 386. In discussing this subject, plaintiffs cite the cases of Wilson v. Armstrong, Tex.Civ. App., 236 S.W. 755, and Equitable Trust Co. v. Fisher, 106 Ill. 189. Those cases, however, deal with situations in which a substitute or successor trustee gave notice of sale before the date of his appointment. The courts held that the trustees, under those circumstances, had no power to act or give notices until actually appointed and that conveyances executed as a result of sales based on those defective notices were void. These cases are not authority for the proposition that a successor trustee may not sell under a proper notice published by his predecessor trustee.

The conclusion reached by the Texas courts is a logical one. The successor trustee steps into the shoes of his predecessor to carry on his function and is vested by contract with the same powers. Furthermore, the purpose to be served by the publication of a notice of trustee's sale is accomplished. That was true in this case. The mortgagors were notified and

Mr. Smith was present at the sale. The holder of the second deed of trust on the property was notified, was present and bid on the property. Other persons were present and participated and the bidding was spirited. Smith himself testified that he knew of no prospective bidders who did not attend the sale. There is no contention that the bidding was chilled in any way or that the publication of an additional notice by the successor trustee would have produced more bidders or brought a better price. There is no showing that anything occurred at the sale to discourage bidders or to result in a depressed sale price. No deficiency claim is involved and the evidence discloses no reason to hold that the notice published by Lee failed to accomplish the purpose of such a notice. Under such circumstances, we hold that Hamm, as successor trustee, had the right to conduct the sale pursuant to the notice published by his predecessor.

The trial court found that McCue-McGuire Mortgage Company was a bona fide purchaser for value at the sale and for this additional reason the deed to it could not be set aside. Plaintiffs deny this conclusion. Much of their brief on this point is based on the propositions that (1) the appointment of a successor trustee was not authorized under the facts and (2) the successor trustee did not readvertise the property for sale, both of which facts were known to the purchaser. We already have held against plaintiffs on both of these points. They provide no basis for holding that McCue-McGuire Mortgage Company was not an innocent purchaser for value. In addition, plaintiffs rely on the fact that the trustee was a salaried employee of Equitable, which fact was known to Mc-Cue-McGuire. This court heretofore has held that this does not invalidate the sale, at least in the absence of proof of chilled bidding. Farm Mortgage Holding Co. v. Homan, 342 Mo. 969, 119 S.W.2d 272. See also Jackson v. Watts, Tex.Civ.App., 113 S.W.2d 584. There was no evidence of chilled bidding. The trial court held that

Hamm acted with fidelity and sound judgment and that plaintiffs were not prejudiced by the fact that he was an employee of Equitable. There is evidence to support this conclusion and it is not clearly erroneous. McCue-McGuire was a bona fide purchaser for value.

■ Plaintiffs' brief also mentions the fact that Hamm received no trustee's fee and that he was told by Wood that a trustee's fee would not be paid. No authority is cited to show that this makes the sale bad, and we hold that it does not. The question is whether the evidence disclosed any fraudulent or wrongful conduct on the part of the trustee whereby the mortgagors were prejudiced. This is to be determined on the basis of what he did, not whether he was compensated.

■ Still another contention by plaintiffs is that representatives of Equitable lulled Smith into feeling that Equitable would accept six payments and that the foreclosure scheduled for June 19 would not occur. Both Wood and Nulton testified to the contrary and identified letters sent to plaintiffs about the scheduled foreclosure sale. The trial court resolved this issue by concluding as follows: "Plaintiffs were aware at all times the foreclosure sale would be held on June 19, 1967, as published. They were never told, nor led to believe by Equitable that the foreclosure sale would be postponed or changed from June 19, 1967." Such conclusion is amply supported by evidence and is not clearly erroneous.

■ The assertion also is made that the sales price was grossly inadequate when the value of the property of at least $35,000 is compared with a foreclosure sale price of $16,700. This is not such gross inadequacy as to provide a basis, in and of itself, for setting aside the trustee's deed. Judah v. Pitts, 333 Mo. 301, 62 S.W.2d 715. Actually, plaintiffs' brief recognizes this fact, but asserts that the inadequacy is to be considered in connection with other irregularities in the sale. The trial court held against plaintiffs with respect to their contentions that fraud and irregularities existed, and we have held herein that the trial court's conclusions in that respect were not clearly erroneous.

■ Finally, plaintiffs assert a claim to relief based on the fact that the instrument appointing Hamm as successor trustee was recorded subsequent to the foreclosure sale.

The actual signing and acknowledgment by Wood on behalf of Equitable of the appointment of Hamm occurred on the day of the sale, although the decision to appoint him had occurred earlier. Papers first were prepared for his appointment by the court, and later a conclusion was reached that the appointment could be made by an instrument executed by Equitable. This instrument was recorded on June 22, 1967, along with the trustee's deed. Smith did not learn of the substitution of Hamm until shortly after he arrived on the day of sale at the court house steps where the sale was to be conducted.

Plaintiffs claim that recording of the instrument appointing him is required under §§ 442.380, 442.390 and 442.400, RSMo 1959, V.A.M.S. They frankly state that they have found no Missouri case deciding the question of whether recording is necessary before such instrument is valid and the successor trustee may act thereunder.

■ Section 442.380 requires recording of any instrument which conveys real estate or whereby any real estate may be affected. The instrument appointing Hamm as successor trustee transfers to him the title to the property which previously was vested in Lee as trustee, and it is an instrument contemplated by § 442.380. Section 442.400 provides that such instrument shall not be valid until after recording except in the case of parties thereto and persons with actual notice thereof. The effect of § 442.400 is not to make the instrument void prior to recording. State ex

rel. and to Use of Crites v. Short, 351 Mo. 1013, 174 S.W.2d 821. The statute merely postpones the instrument's effectiveness as to parties and those persons who do not have actual knowledge. In the instant case, plaintiffs are not entitled to any relief on the basis of the delayed recording because Smith had acquired actual knowledge of the substitution. He was present at the place where the sale was held and was told of the change, after which he delivered a redemption notice to Hamm and Nulton. In addition, Hamm announced at the start of the sale that he had been appointed successor trustee and as such was conducting the sale. Since Smith had actual knowledge, the instrument was effective as to plaintiffs.

The rather late appointment of Hamm, of which plaintiffs also complain, is not shown to have been prejudicial to plaintiffs in any way, and they are not entitled to relief on that basis. There was no showing that they were prejudiced in any way or that the results would have been any different if the appointment had been made earlier or, for that matter, if Lee instead of Hamm had conducted the sale.

Plaintiffs remained in possession after the sale and after the trial of this case, having filed a redemption bond and a supersedeas bond. Defendant McCue-McGuire Real Estate, Inc. (to which the property was conveyed immediately by McCue-McGuire Mortgage Company) filed a counterclaim to recover for loss of use and rental value of the premises from and after June 19, 1967. The trial court found that the reasonable monthly rental was $275 and entered judgment for the rentals plus interest which had accrued from June 19, 1967, to the date of entry of judgment by the trial court. Of course, additional rentals and interest have accrued since that date and will continue to accrue until the property is vacated by plaintiffs pursuant to the judgment in this case.

The judgment and decree of the trial court is affirmed in all things except that the amount of the judgment on behalf of defendant McCue-McGuire Real Estate, Inc., on its counterclaim against plaintiffs shall be recomputed on the basis of $275 per month from June 19, 1967, to the date the premises are vacated, together with interest thereon at 6% from the date each payment accrues. Case remanded for entry of that judgment.

DONNELLY, P. J., MORGAN, J., and TURPIN, Special Judge, concur.