

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

SANFORD SACHTLEBEN and )
LUCIANN HRUZA, ) No. ED110612
)
    Appellants, ) Appeal from the Circuit Court of
) St. Louis County
vs. ) 21SL-CC02156
)
ALLIANT NATIONAL ) Honorable Joseph S. Dueker
TITLE INSURANCE CO., )
) Filed: July 25 2023
    Respondent. )

Lisa P. Page, P.J., Thomas C. Clark II, J., and Renée D. Hardin-Tammons, J.

## Introduction

This insurance policy coverage case arises from the existence of a little barn on the prairie. In September 2016, Sanford Sachtleben and Luciann Hruza ("Appellants") purchased a 20-acre piece of farmland in New Melle, Missouri from Perry and Joanie Sullivan (the "Sullivans"). The Sullivans constructed a barn on the property that apparently violated a number of New Melle's zoning ordinances. Appellants purchased a title insurance policy for the property from Respondent Alliant National Insurance Co. ("Alliant National") but were unaware of any ordinance violations affecting the property until they were joined as defendants to a pre-existing lawsuit ("New Melle lawsuit"). Specifically, the city of New Melle sought to enjoin use of the barn due to the alleged, longstanding ordinance violations. Pursuant to a title policy provision

that insures against ordinance violations, Appellants expected Alliant National to defend against the New Melle lawsuit. When Alliant National refused, Appellants filed suit for breach of contract.

The trial court granted summary judgment in favor of Respondent Alliant National, specifically holding that Appellants were not entitled to coverage pursuant to the policy terms because the existing lawsuit was not filed with the St. Charles County Recorder of Deeds and effectively prevented Alliant National from receiving constructive notice.

Appellants raise six points on appeal. They argue that the trial court erred when granting summary judgment in favor of Alliant National and excusing their failure to defend against the New Melle lawsuit because (1) the policy's definition of "Public Records" is ambiguous and must be construed in Appellants' favor; (2) the ordinance violations in the New Melle lawsuit were defects and encumbrances on the title; (3) the title was unmarketable because the New Melle lawsuit affected Appellants' ability to use and enjoy the property; (4) the title was defective because the Sullivans committed fraud by omitting the existence of the New Melle lawsuit; (5) the title was defective because the New Melle lawsuit was not properly recorded; and (6) Alliant National had actual notice of the New Melle lawsuit and ordinance violations, effectively activating coverage under the policy.

Considering Alliant National actually knew about the New Melle lawsuit before issuing the title policy, we find that the actual notice triggered the company's coverage obligations so we grant Point VI, which is dispositive.

**Background**

On September 28, 2016, Sanford Sachtleben and Luciann Hruza ("Appellants") purchased from Perry and Joanie Sullivan (the "Sullivans") property in St. Charles County

2

located in the 500 block of Foristell Road in New Melle, Missouri. At the time of purchase, the 20-acre parcel was comprised largely of unimproved farmland with the exception of a horse barn that was erected by the Sullivans in May.

However, Appellants were unaware that the city of New Melle filed suit against the Sullivans on August 29, 2016, alleging that the barn violated city ordinances 224 §§ 1–2 (20.09), which states that the property is zoned for single family dwellings only and 224 §§ 1–1 (20.06), which states that accessory buildings, such as the barn, cannot be the principal building utilized on the property. New Melle requested the court enjoin the Sullivans from utilizing the barn except for the purpose of constructing a home on the property or order the Sullivans to demolish the building for failing to comply with city ordinances. Further identified as Cause No. 1611-CC00794, the lawsuit ("New Melle lawsuit") was pending in St. Charles circuit court at the time Appellants purchased the property.

Prior to closing, Appellants engaged Investors Title Company ("ITC"), an insurance broker, to purchase title insurance for the property from Alliant National, a title insurance underwriter. Following a title search, ITC prepared a title commitment for Alliant National identifying the New Melle lawsuit as a potential "special exception" from coverage. More specifically, ITC stated: "We find record of a pending suit # 1611-CC00794 by and between The City of New Melle, Plaintiff[,] and Perry Sullivan and Joanie Sullivan[,] Defendants, the outcome of which may affect the subject." Appellants were not provided a copy of the title commitment, or otherwise informed by ITC, Alliant National, or the Sullivans, about the New Melle lawsuit. On September 30, 2016, Alliant National issued to Appellants a title policy that did not except the New Melle lawsuit from coverage. In fact, Alliant National did not mention, identify or reference the lawsuit in the title policy.

3

Appellants did not know about the New Melle lawsuit until October 19, 2016, when they were added as defendants, learned about the alleged ordinance violations and gleaned that the city was seeking to demolish the barn, the sole building on the property. Appellants requested Alliant National defend against the suit pursuant to section 5 of the policy's "Covered Risks" ("Covered Risk 5"), which states:

**COVERED RISKS**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, ALLIANT NATIONAL TITLE INSURANCE COMPANY, a Colorado corporation (the "Company") Insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

. . .

5. The violation or enforcement of any law, ordinance, permit, or government regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to
(a) the occupancy, use, or enjoyment of the Land; [or]
(b) the character, dimensions, or location of any improvement erected on the Land;

. . .

If a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

After Alliant National denied Appellant's request, Appellants filed suit in St. Louis County circuit court on May 13, 2021, asserting that Alliant National breached its contract, the title policy, by refusing to defend against the New Melle lawsuit. In response, Alliant National moved for summary judgment based on a lack of notice, stating that Covered Risk 5 is inapplicable to Appellants' claim because the contract only covers ordinance violations recorded in the St. Charles County land records as of September 30, 2016, when Alliant National sold the policy to Appellants. In other words, since the New Melle lawsuit was not recorded with the St. Charles Recorder of Deeds, Covered Risk 5 did not apply, allowing Alliant National to

justifiably deny coverage. Among other criticisms, Appellants replied that the contract definition of "Public Records" could not be so narrowly construed to include only records filed with the St. Charles County Recorder of Deeds. Pursuant to Condition 1(i), the policy defines "Public Records" as: "Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value without Knowledge . . ." Section 442.390[1] states:

> Every such instrument in writing, certified and recorded in the manner herein prescribed, shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgages shall be deemed, in law and equity, to purchase with notice.

The trial court granted Alliant National's motion for summary judgment, finding that the title policy "only covers losses caused by ordinance violations if a notice of those ordinance violations was properly recorded with the St. Charles County, Missouri's Recorder of Deeds as of the contract's effective date." This appeal follows.

**Standard of Review**

We review a grant of summary judgment *de novo. Kinnaman-Carson v. Westport Ins. Corp.*, 283 S.W.3d 761, 764 (Mo. banc 2009) (citing *Southers v. City of Farmington*, 263 S.W.3d 603, 608 (Mo. banc 2008)). We apply "the same criteria as the trial court in determining whether summary judgment was proper." *Bowden v. Am. Modern Home Ins. Co.*, 658 S.W.3d 86, 91 (Mo. App. S.D. 2022) (quoting *Green v. Fotoohighiam*, 606 S.W.3d 113, 115-16 (Mo banc. 2020)). "Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist." *Cowin v. Shelter Mutual Ins. Co.*, 460 S.W.3d 76, 77 (Mo. App. W.D. 2015). "A genuine issue exists when the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential

---

[1] All statutory references are to the Revised Statutes of Missouri (2016).

facts." *Bray v. Wells Fargo Home Mortgage, Inc.*, 654 S.W.3d 732, 739 (Mo. App. E.D. 2022) (quoting *Jerseyville Mall, L.L.C. v. Shop 'N Save Warehouse Foods, Inc.*, 633 S.W.3d 523, 525 (Mo. App. E.D. 2021)).

We review the record "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Walsh v. State Farm Mutual Auto Ins. Co.*, 662 S.W.3d 105, 110 (Mo. App. W.D. 2023) (quoting *Green*, 606 S.W.3d at 116).

**Discussion**

In their sixth point, which is dispositive of this appeal, Appellants assert that the trial court erred in granting summary judgment in favor of Alliant National because the title company had actual notice of the New Melle lawsuit which was sufficient to activate coverage pursuant to the title policy. We agree and find that summary judgment is improper because the record reflects a genuine dispute as to whether Alliant National had sufficient notice of the New Melle lawsuit to invoke its coverage obligations, which is a question of fact for the jury. *Masterson v. West End Narrow Gauge R. Co.*, 5 Mo. App. 64, 67 (Mo. App. 1878).

Applying the relevant case law and statutes, there is a genuine dispute that Alliant National had constructive and actual notice of the New Melle lawsuit following the title search conducted by ITC where they located a "record" of the pending suit. Section 442.380[2] "requires recording of any instrument which conveys real estate or whereby any real estate may be affected." *Smith v. Equitable Life Assur. Soc. of U. S.*, 448 S.W.2d 588, 594 (Mo. 1970). Further, Alliant National relies on section 442.390, which provides that subsequent purchasers of such

---

[2] "Every instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner herein prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated."

real estate are "deemed to purchase with constructive notice of the contents of [those] recorded instruments." *White v. Buntin*, 77 S.W.3d 702, 705 (Mo. App. E.D. 2002). Since the New Melle lawsuit is an instrument affecting real estate, Alliant National argues that it did not receive constructive notice of the lawsuit since it was not filed with the St. Charles County Recorder of Deeds.

However, Missouri's recording laws "are not intended to sacrifice substance to form, nor is it intended that actual notice shall not bind where constructive notice would." *Draude v. Rohrer Christian Mfg. Co.*, 9 Mo. App. 249, 254 (Mo. App. 1880). Pursuant to section 442.400,[3] unrecorded instruments are not valid "until after recording *except in the case of parties . . . and persons with actual notice thereof*." *Smith*, 448 S.W.2d at 594 (emphasis added); *see also Bob DeGeorge Associates, Inc. v. Hawthorn Bank*, 377 S.W.3d 592, 597 (Mo. banc 2012). Clearly, the statutory language makes an exception to the recording requirement, refusing to insulate parties with actual notice. Recognizing the legislative intent, the courts further advise that "[a] person has no right to shut his eyes or ears to avoid information and then say that he had no notice, and it is wrong not to heed the 'signs and signals' that one sees. It will not do to remain willfully ignorant of a thing readily ascertainable." *Walkenhorst-Newman v. Montgomery Elevator*, 37 S.W.3d 283, 287 (Mo. App. E.D. 2000) (citing 16A Am.Jur.2d Notice § 13 (1989)). Pursuant to section 442.400, we find that Alliant National received actual notice of this matter after ITC uncovered the New Melle lawsuit during the record search and conveyed this information.

Our holding is consistent with other caselaw. In *Smith*, the Supreme Court of Missouri determined whether a successor trustee could perform his duties after his written appointment

---

[3] "No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record."

was not filed pursuant to section 442.380. 448 S.W.2d at 594. When applying section 442.400, the Court held that even though the defendant insurance company failed to record the appointment prior to the applicable foreclosure sale, Smith was aware of the change after he was told of the substitute appointment, was present at the sale location and he later delivered a redemption notice to the successor trustee. *Id.* at 595. Based on these collective factors, Smith had actual knowledge of the unrecorded appointment and he was not entitled to relief from the sale. *Id.*

Similarly, the record reflects that Alliant National had actual notice of the ordinance violations and the pending New Melle lawsuit before it issued the title policy to Appellants. As Alliant National's agent,[4] ITC identified the New Melle lawsuit as potentially activating coverage, stating: "We find record of a pending suit # 1611-CC00794 by and between The City of New Melle, Plaintiff[,] and Perry Sullivan and Joanie Sullivan[,] Defendants, the outcome of which may affect the subject" property. Despite this, the New Melle lawsuit was not mentioned in the Schedule B exceptions listed in the resultant title policy. As the case law and statute advise, Alliant National may not "shut [its] eyes or ears to avoid information" then claim it lacked notice of the New Melle lawsuit because it was not recorded pursuant to section 442.380 when its own agent identified the pending lawsuit, further disclosing the case number, the involved parties, and the potential effect on the property. *Walkenhorst-Newman*, 37 S.W.3d at 287. Moreover, when "one . . . who proposes to make a specialty of examining titles . . . gives a certificate that he has made examination and finds no incumbrance against certain property, he will be liable if the incumbrance is of record in such a way as to give constructive notice to every

---

[4] "An insurer is bound by the information acquired by its agent …" *Warren Davis Properties V, L.L.C. v. United Fire & Casualty Co.*, 111 S.W.3d 515, 523 (Mo. App. S.D. 2003); *see also Pine Lawn Bank & Trust Co. v. Urbahns*, 417 S.W.2d 113, 119 (Mo. App. 1967) ("knowledge of the agent is chargeable to the principal").

one interested, and actual notice to every one looking for it in the proper way." *Dobb v. Williams*, 3 Mo. App. 278, 282 (Mo. App. 1877).

At oral argument, Alliant National's counsel stated that the insurer's "actual knowledge does not matter" and that "actual knowledge is secondary" to the records filed with the St. Charles County Recorder of Deeds. When making this argument, he does not cite any caselaw, but asks us to find that the lack of constructive notice is fatal to Appellants' claim, pursuant to the terms of Covered Risk 5 and Condition 1(i). Following our review of the caselaw, we disagree and hold that actual notice is sufficient to bind Alliant National to its obligations under the policy.

We also find that counsel's supposition is further refuted by the language of the title policy itself. Section 3 of the policy's "Exclusions from Coverage" states that Alliant National will not provide coverage for "adverse claims, or other matters" that are "not Known to [Alliant National] . . . ." Condition 1(f) then defines the terms "Knowledge" or "Known" as "[a]ctual knowledge, not constructive knowledge or notice that may be imputed to an insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title." Contrary to counsel's assertion, this provision reflects that Alliant National's actual knowledge heavily influences an adverse claim. We conclude that Alliant National had actual notice of an "adverse claim or other matter" affecting the property because ITC alerted them about the existing New Melle lawsuit.

Once armed with the information affecting the property, Alliant National had the option of extending coverage or declining to do so. Accordingly, it chose to provide coverage knowing of the existing cloud hovering over the barn property. "A party who has received actual notice is not prejudiced by and cannot complain of the failure to receive statutory notice," as

9

contemplated by section 442.390. *Mosby v. Treasurer of State of Mo.*, 954 S.W.2d 11, 13 (Mo. App. E.D. 1997) (quoting *Bosworth v. Sewell*, 918 S.W.2d 773, 778 (Mo. banc 1996)). To conclude otherwise, we would be allowing Alliant National to avoid its obligations when it was aware of the imminent storm forming as the New Melle lawsuit and the looming threat to Appellants' purity of title, certain to imperil the little barn on the prairie. Point VI is granted.

## Conclusion

For the foregoing reasons, we reverse the trial court's entry of summary judgment in favor of Alliant National, and remand for further proceedings consistent with this opinion.

_____

Thomas C. Clark II, Judge

Lisa P. Page, P.J., and
Renée D. Hardin-Tammons, J., concur.