**PEPSI MIDAMERICA, Appellant,**

v.

**Jason S. HARRIS, Respondent.**

No. 28206.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 7, 2007.

Daniel P. Finch and Andrew D. O'Brien, Cape Girardeau, for Appellant.

No brief filed for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Pepsi Midamerica ("Appellant") appeals the trial court's judgment in favor of Jason S. Harris ("Respondent") on Appellant's petition for breach of contract.[1] Appellant alleges four points of trial court error in this appeal. We affirm the judgment of the trial court.

Viewing the evidence in the light most favorable to the trial court's judgment, *Barrows v. Firstar Bank*, 103 S.W.3d 386, 390 (Mo.App.2003), the record reveals that Appellant filed its petition for breach of contract against Respondent on August 7, 2006. In its petition Appellant alleged Respondent "entered into a written employment agreement, whereby [Respondent] was employed by [Appellant]." Appellant also asserted that in addition to the employment agreement, the parties entered into a "Driver/Sales Training Employment Agreement" ("the Agreement")[2] which

---

1. Respondent did not file a brief in this matter.

2. The Agreement, which was signed by Respondent as well as an agent of Appellant, provided:

 THIS AGREEMENT made and entered into this 17th day of April, 2006 by and between [Appellant] and [Respondent].
 WHEREAS the employee commits to full time employment with [Appellant] for a minimum of 2 years after completion of their driver/sales training.
 In exchange for signing this agreement [Appellant] commits to provide driver/sales training at a value of $2500.00.
 Full time starting compensation will be $450.00 per week.
 As an employee of [Appellant] the employee has the right to terminate their employment at any time. Likewise, [Appellant] retains

provided that Respondent agreed to remain employed with Appellant for a period of two years in exchange for truck driving and sales training valued at $2,500.00. Appellant maintained Respondent quit his employment less than three months later and, accordingly, it was entitled to damages pursuant to the Agreement in the amount of $2,243.15.

A bench trial was held on November 7, 2006. At trial, Brian House ("Mr.House"), vice-president of sales for Appellant, testified that Respondent was hired on April 17, 2006, at which time he signed the Agreement and entered the truck driving and sales training program. Mr. House testified as to his interpretation of the Agreement. He related that it provided that if an employee received his Commercial Driver's License ("CDL") through the company and then terminated his employment within a two year period, the employee would be "responsible for repayment of a proportionate share of [Appellant's] $2500 training investment." Mr. House stated that the $2500.00 was "[p]rorated over the two years' time."

Mr. House also stated that the truck driving and sales training program offered by Appellant is one of only two in-house training programs in Missouri to provide truck driving training. He testified that Appellant has "an on-site trainer" named "Mike," who is certified by the state as a CDL instructor. He related that the on-site trainer had to receive special training in Jefferson City in order to be certified and there were certain fees and costs associated with having an on-site trainer. Mr.

House also testified that Appellant provided its employees with "a training book ... that the State offers just to get the written part of their CDL, or they can pick it up at the state office. . . ." He related that once the employee obtained a written manual Appellant would permit the employee to ride along with a licensed CDL driver, "[t]hen basically at the end of the time period, we test [the driver]." He testified that if the driver "passes, then [Appellant] can issue a certificate to go get a CDL." Mr. House stated Appellant would also give a driver access to a $100,000.00 truck and trailer to practice with in its large parking lot. Mr. House also related that during the training period the driver, who he said provided no benefit to Appellant, would be paid "while . . . . learning to become a route salesman." Mr. House testified that private driving schools charge between $3,000.00 and $7,000.00 for CDL training and that Appellant gives the training to its employees for free in exchange for the promise to work for Appellant for two years.

Additionally, Mr. House testified Respondent received his CDL while employed by Appellant. He related that Respondent then terminated his employment with Appellant on July 1, 2006, at which time he failed to honor the Agreement to maintain employment with Appellant. Mr. House stated that he felt Appellant fulfilled all of its obligations to Respondent.

Respondent, on the other hand, testified he signed the Agreement, but that at the time of signing he was told that "[he]

the right to expand, reduce, or make changes in, or termination from, the staff. Employment therefore, is considered 'at will', permitting either party to end the employment relationship at either's choice at any time. [Appellant] may terminate the employee at any time during or after the above designated period.

If an employee terminates their employment, or is terminated by [Appellant] prior to completion of this agreement, the employee will be responsible for re-payment of a proportionate percent of [Appellant's] training investment of $2500.00.

would receive extensive CDL training." He stated that "[w]hen [he] asked [Appellant] for a CDL book, [he] was told [he] had to go get [his] own." As for Mr. House's assertion that he was given an opportunity to ride with someone in a truck in order to aid his training, Respondent testified that he rode along with a driver named Claude Armstrong ("Mr. Armstrong"), who had only had his CDL for two months, and "didn't know how to drive, really." Respondent testified that Mr. Armstrong "didn't know how to run the handheld [of the truck]. So, [Respondent] was put with him so [Mr. Armstrong] could drive and [Respondent] could run the handheld." Respondent also related he worked the route with Mr. Armstrong when he was riding along with him during his training period. He stated he "delivered the sodas just like [Mr. Armstrong] did. [He] took [the sodas] in, put them on the shelf. [He] worked every day just like [Mr. Armstrong]. [He] just couldn't drive."

Respondent, likewise, testified he was told that if he wanted to do his training he would "have to come and do it on [his] own time, at [his] own expense, but [Appellant] would provide a truck. But there was no trainer there. [He] just went and drove by [him]self, nobody was there to show [him] how to do it or nothing." He related he was allowed to drive eighteen miles in one of Appellant's trucks during his training period with Mr. Armstrong and that he practiced in Appellant's parking lot for approximately two hours on one occasion. He testified that he "didn't receive any kind of CDL training. You know, to study the CDL book, [he] had to do it on [his] own time." He stated the CDL book he got from the state "tells you what you have

to take on the test. But there was nobody there to show [him] how to do those tests. [He] had to figure those out on [his] own." Respondent stated he taught himself "to parallel park a truck, how to back the truck without using the mirror ... all on [his] own."

Respondent also related he would not get home from work in the evening "until 8:00 or 8:30 ... so it didn't leave [him] much time to study. After a week and a half of only being there, [he] was asked to take [his] test ... with no time to study, no time to drive." Respondent testified he passed the CDL test and received his CDL four weeks after beginning his employment with Appellant. He stated he felt that he got his CDL "[o]n [his] own time and [his] own dollar" and based on his prior knowledge of driving farm trucks.

The trial court entered its Judgment on November 7, 2006, in which it found that Appellant "failed to provide [Respondent] driver or sales training at a value of $2,500 pursuant to the [Agreement] entered into between the parties on April 17[,] 2006[,] and finds the issues on [Appellant's] Petition in favor of [Respondent] and against [Appellant]." The trial court then assessed costs against Appellant. This appeal by Appellant followed.

The standard of review in a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[3] The court of appeals will affirm the judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* "A judgment should be set aside as being against the weight of the evidence only with caution and with a firm belief that the judgment is wrong." *Jerry*

---

**3.** *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that Rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

Bennett Masonry, Inc. v. Crossland Const. Co., Inc., 171 S.W.3d 81, 88 (Mo.App.2005). "The trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness." *Schaefer v. Rivers,* 965 S.W.2d 954, 956 (Mo.App. 1998). "In assessing the sufficiency of the evidence, we examine the evidence and the reasonable inferences derived therefrom in the light most favorable to the judgment." *In re Marriage of Harris,* 154 S.W.3d 456, 457 (Mo.App.2005). Furthermore, " '[t]rial judges are better able than appellate courts to assess the credibility of the parties and other intangibles that are not completely revealed by the record on appeal.' " *Bowles v. All Counties Inv. Corp.,* 46 S.W.3d 636, 638 (Mo.App.2001) (quoting *Kerr v. Louderback,* 35 S.W.3d 511, 513 (Mo.App.2001)). " 'All fact issues upon which no findings are made shall be considered as having been found in accordance with the result reached.' " *Bowles,* 46 S.W.3d at 639 (quoting *Schaefer,* 965 S.W.2d at 956). This Court does not defer to the trial court's determinations of law. *City of Kansas City v. Hon,* 972 S.W.2d 407, 409 (Mo.App.1998).

Here, no request for findings of fact or conclusions of law was made by the parties and the court made neither. Nor is there any other explanation in the record for the basis of the trial court's determination. Therefore, the judgment is to be upheld on any reasonable theory within the pleadings and supported by the evidence. *See Nail Boutique, Inc. v. Church,* 758 S.W.2d 206, 208 (Mo.App.1988).

■■■■ In a breach of contract claim, "a plaintiff must allege and prove (1) mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of contract." *Fidelity Nat. Title Ins. Co. v. Tri-*Lakes Title Co., Inc., 968 S.W.2d 727, 730 (Mo.App.1998). "As a general rule, in a breach of contract case, the goal in awarding damages is to put the non-breaching party in as good a position as he or she would have been in if the contract had been performed." *Cornejo v. Crawford County,* 153 S.W.3d 898, 902 (Mo.App. 2005). "A party claiming damages for breach of contract bears 'the burden of proving the existence and amount of damages with reasonable certainty.' " *Id.* (quoting *Am. Laminates, Inc. v. J.S. Latta Co.,* 980 S.W.2d 12, 23 (Mo.App.1998)). " 'The particular facts and circumstances of each case dictate which measure of damages is appropriate.' " *Cornejo,* 153 S.W.3d at 902 (quoting *Gee v. Payne,* 939 S.W.2d 383, 385 (Mo.App.1997)).

In its first point relied on Appellant asserts the trial court erred in denying its request for damages. Appellant asserts the trial court "failed to properly apply Missouri law pertaining to contract performance ..." because it "ruled against [Appellant] on a perceived failure of [Appellant] to literally comply with the parties' written agreement, where the trial court instead should have deemed substantial compliance by [Appellant] as sufficient under Missouri law."

■■■■ In the absence of an express provision in a contract requiring literal compliance, substantial compliance of a contract is sufficient. *Schaefer,* 965 S.W.2d at 957. " 'A party's performance under a contract is substantial if the deviation from the contract was slight and if the other party received substantially the same benefit it would have from literal performance.' " *Id.* (quoting *Gundaker v. Templer,* 560 S.W.2d 306, 309 (Mo.App.1977)). "Whether or not a contract has been substantially performed depends on the facts and circumstances of the particular case." *Brockman v. Soltysiak,* 49 S.W.3d 740, 745

(Mo.App.2001); *see also McKnight v. Midwest Eye Institute,* 799 S.W.2d 909, 915 (Mo.App.1990) (holding that "[t]he materiality of a breach is usually a question of fact").

With that being said, in order to recover on a claim of breach of contract, a party, such as Appellant in the present matter, must show their own substantial compliance with the terms of the contract. *Brockman,* 49 S.W.3d at 745. Here, the Agreement specifically set out Appellant "commits to provide driver/sales training at a value of $2500.00."

Mr. House testified Appellant provides its drivers, during their paid training program, with: access to a certified CDL instructor; materials to study; the opportunity to ride along with a licensed CDL driver; and the chance to practice in their $100,000.00 truck and trailer.

Respondent testified that Appellant informed him when he signed the Agreement that he "would receive extensive CDL training," but that Respondent felt he got his CDL "[o]n [his] own time and [his] own dollar." Respondent stated he rode with a driver who only had his CDL for two months and during that time he "delivered sodas just like the driver did;" he had to get his own CDL book from the State; he was told he had to do his training "on [his] own time, at [his] own expense, but [Appellant] would provide a truck;" he never met with the certified CDL trainer; he practiced driving by himself during one two hour occasion without direction from Appellant; he was only allowed to drive eighteen miles on a roadway during his training period; he felt he "didn't receive any kind of CDL training;" he read the CDL book by himself in the evening after he got off work; and he taught himself "to parallel park a truck, how to back the truck without using the mirror...."

It was within the province of the trial court to believe Respondent's testimony that he did not receive truck driver training valued at $2,500.00 over that of Mr. House, who testified that Appellant provided extensive training to Respondent. "When there is conflicting evidence, it is within the trial court's discretion to determine the credibility of the witnesses, and accept or reject all, part, or none of the testimony it hears." *Harris,* 154 S.W.3d at 457. Accordingly, Appellant cannot recover on its claim of breach of contract because it did not substantially comply with the terms of the contract because of a material breach of the terms of the Agreement to provide $2,500.00 worth of truck driver training to Respondent. *See Brockman,* 49 S.W.3d at 745. "A material defect or failure in performance, however, is not a reasonably expected performance, and so operates to prevent the duty of the other party to perform from becoming due." *Health Related Services, Inc. v. Golden Plains Convalescent Ctr., Inc.,* 806 S.W.2d 102, 104 (Mo.App.1991). We find the trial court did not misapply the law and did not err in denying Appellant's request for damages. Point denied.

Appellant's second point relied on asserts the trial court erred in denying its request for damages because "it failed to properly apply Missouri law pertaining to contract construction...." Specifically, Appellant maintains "the trial court misinterpreted the parties' contract to include terms describing specific performance, where the contract only described performance generally."

" 'Construction of a contract is generally a question of law.' " *Textor Const., Inc. v. Forsyth R–III School Dist.,* 60 S.W.3d 692, 697 (Mo.App.2001) (quoting *Stephens v. Brekke,* 977 S.W.2d 87, 94 (Mo.App.1998)). " 'It is not within the

province of the court to alter a contract by construction, or to make a new contract for the parties.'" *Textor*, 60 S.W.3d at 697 (quoting *Rickey v. New York Life Ins. Co.*, 229 Mo.App. 1226, 71 S.W.2d 88, 93 (Mo. 1934)). "'A court's duty is confined to the interpretation of the contract which the parties have made for themselves, without regard to its wisdom or its folly, and a court may not read into a contract words which the contract does not contain.'" *Id.* "The cardinal principle [of] contract interpretation is to ascertain the intention of the parties and to give effect to that intent." *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. banc 1995). The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning. *Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658 (Mo.App.2001).

Appellant broadly asserts in his argument that "the purpose" of the Agreement "was to enable [Respondent] to obtain his CDL to further his employment ..." with Appellant, and that "[t]he exact result that the parties desired was achieved where [Respondent] successfully obtained a CDL ..." It is more precise to note that Respondent agreed to "commit[ ] to full time employment with [Appellant] for a minimum of 2 years after completion of [his] driver/sales training." "In exchange" for that commitment, Appellant "commit[ed] to provide driver/sales training at a value of $2500.00." Based on the plain and ordinary meaning of the contract before this Court, *Helterbrand*, 48 S.W.3d at 658, it appears that the trial court properly found "in favor of [Respondent] and in the context of all the evidence, we believe, reasonably so." *Hicks v. Peniston*, 480 S.W.2d 522, 524 (Mo.App.1972). The trial court did not err in applying Missouri contract law to the present matter and in constru-

ing the contract as it did. Point Two is denied.

In its third point relied on Appellant maintains the trial court erred in denying its request for damages "because the trial court's determination that [Appellant] materially breached the parties['] contract is not supported by competent and substantial evidence and is against the weight of the evidence...." Appellant asserts Respondent "received the intended benefit of the parties['] contract, [Respondent] unilaterally eliminated the opportunity for [Appellant] to cure any alleged defect, [Appellant] stands to suffer significant forfeiture if the contract is not enforced, and [Appellant] has acted in good faith."

 As best we discern its argument, Appellant appears to assert in this point relied on that the trial court erred in finding Appellant's breach was material and, thus, sufficient to excuse Respondent's performance under the contract. It is a question of fact whether a breach is material or immaterial. *L.L. Lewis Const., L.L.C. v. Adrian*, 142 S.W.3d 255, 260 (Mo. App.2004).

 Here, the trial court made no findings relating to a material breach of the contract at issue and, instead, found that Appellant "failed to provide [Respondent] driver or sales training at a value of $2,500 pursuant to the [Agreement]...." There was sufficient evidence to support the trial court's implicit ruling that Appellant's failure to provide $2,500.00 worth of driving and sales training to Respondent was a material breach of the parties' employment contract. "[A] material breach in a contract may excuse the other parties performance." *Campbell v. Shaw*, 947 S.W.2d 128, 132 (Mo.App.1997).

As previously related, Respondent testified at length about the fact that he was promised extensive driving and sales train-

ing when he signed the Agreement. He further testified that he received no active instruction from Appellant or its agents that helped him obtain his CDL. Given this set of facts, the material breach by Appellant excuses Respondent's performance under the Agreement. *See McKnight,* 799 S.W.2d at 915. We cannot say the trial court erred by denying Appellant's request for damages. Point Three is denied.

Appellant's fourth point is essentially the same rendition as its third point. Appellant asserts the trial court erred in denying its request for damages because its "determination that [Appellant] did not sufficiently perform its contractual obligations to provide CDL training at a value of $2500.00, and thereby breached the parties' agreement, is not supported by competent and substantial evidence and is against the weight of the evidence...." Appellant maintains it presented evidence that it provided Respondent "with an opportunity to observe a licensed driver for several hours, a truck valued at over $100,000.00 in which to practice tested skills, space in which to practice skills, opportunities to practice skills, insurance, and practice testing...." Appellant contends the aforementioned resources enabled Respondent "to obtain the desired benefit of the parties' contract, i.e. a CDL license."

Appellant again argues that under *Schaefer,* 965 S.W.2d at 958, it substantially complied with the contract as issue such that there was insufficient evidence to support the trial court's finding that it failed to provide Respondent with $2,500.00 of training.

However, as previously set out, Respondent had to obtain his own materials relating to obtaining his CDL; had to study on his own time; did not meet with Appellant's certified CDL instructor; and only practiced driving in one of Appellant's

truck on one occasion. Further, Respondent took and passed his CDL test within a short period of time after being employed by Appellant. We cannot say that the trial court erred in determining that Appellant failed to render $2,500.00 in driver/sales training to Respondent given the foregoing facts. We defer to the trial court's factual determinations. *City of Kansas City,* 972 S.W.2d at 409. The trial court did not err in denying Appellant's request for damages. Point Four is denied.

The judgment of the trial court is affirmed.

RAHMEYER, J., and LYNCH, C.J., concur.