

# Missouri Court of Appeals

### Southern District

### Division Two

THE BANK OF MISSOURI,            )
               )
 Plaintiff-Respondent,            )
               )
vs.              )    **Nos. SD32374 & SD32543**
               )      Consolidated
               )
SOUTH CREEK PROPERTIES, LLC,  )    **Filed:  April 10, 2014**
               )
HAMMER COLLECTIONS, LLC,     )
               )
MICHAEL and CHARLOTTE DAWLEY, )
               )
 Defendants-Appellants,            )
               )
and             )
               )
TREADWELL ENTERPRISES, INC.,    )
               )
 Third-Party Defendant-            )
 Respondent.        )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Associate Circuit Judge

### **AFFIRMED**

This case involves an appeal from a judgment in an action to recover the balance due on a promissory note.  After a foreclosure sale of certain commercial real estate ("the property") in Greene County, Missouri, Bank of Missouri ("Bank") sued the defendants—South Creek Properties, LLC ("South Creek"),

Hammer Collections, LLC ("Hammer"), Michael Dawley and Charlotte Dawley[1]—seeking a deficiency judgment. South Creek filed a cross petition seeking quiet title and damages for wrongful foreclosure and added Treadwell Enterprises, Inc. ("Treadwell"), the subsequent purchaser of the property, as an additional defendant. All parties sought summary judgment. The trial court granted summary judgment in favor of Treadwell on the basis of Treadwell's claim that it was a bona fide purchaser for value. The case then proceeded to trial, and the trial court granted judgment in favor of Bank. Defendants appeal. The trial court's judgment is affirmed.

## **Factual and Procedural Background**

Michael and Charlotte moved from Louisiana to Springfield, Missouri, with plans to start a commercial collection business. They created Hammer and began business in April 2006. For the first three years, Hammer operated out of leased office space in Springfield, Missouri. Meanwhile, also in 2006, Michael and Charlotte bought the property at issue in this case. They formed South Creek to own and manage the property.

In 2008, South Creek and Hammer entered into a Small Business Administration loan agreement ("the SBA loan") with Bank for the purpose of constructing an office building on the property. The loan was in the amount of $1,050,000, and was secured by a deed of trust on the property. Michael and Charlotte executed an unconditional guarantee of the loan.

[1] The term "Defendants" will be used to refer to South Creek, Hammer, Michael Dawley, and Charlotte Dawley collectively. Because they share the same last name, Michael Dawley and Charlotte Dawley will be identified as Michael and Charlotte when referred to in their individual capacities. No disrespect is intended.

2

The building on the property was completed in July 2009. Sometime thereafter, Michael and Charlotte decided to move the collection portion of Hammer's operations to Louisiana due to lack of revenue. Hammer began making preparations for the transition in October 2009, and in early November Hammer began moving equipment out of the building.

On November 3, 2009, Michael wrote himself an $11,500 check from Hammer's account with Bank. Michael characterized the check as an owner draw, explaining that was how he was paid for his services to Hammer. A second check was written on November 5, 2009. The proceeds of this second check were placed in a new account with another bank. Bank's Assistant Vice President of Commercial Lending, Michelle Louden ("Vice President"), considered these checks to be "suspicious activity on the account[.]"

On November 10, 2009, Vice President and one of Bank's commercial loan officers, Charles Vandivert ("Loan Officer"), went to see Michael at his home. Michael was in the process of packing to move to Louisiana. The Bank officers indicated they were concerned about the loan. Michael told them he "was committed to the note," but the next payment on the loan, due on November 16, would be late because of the move. Although he did not say how late the payment would be, Michael explained it would take approximately 90 days to get the company back to "full speed operating capacity." Vice President and Loan Officer indicated a late payment was not acceptable and Hammer was in "default" on the loan. Bank froze Hammer's accounts sometime around November 11, 2009.

Hammer did not make the November 16 payment as scheduled. On November 20, 2009, Bank executed a written document appointing Raymond I.

3

Plaster ("Trustee") to serve as successor trustee under the deed of trust. That same day Trustee sent a letter to Defendants' business address declaring the loan in default. The letter also advised that Bank had decided to exercise its power of sale under the deed of trust and enclosed the notice of trustee's sale which was set for December 16, 2009. Publication began on November 24, 2009. The appointment of successor trustee was recorded in the Greene County Recorder's Office on December 1, 2009.

On December 7, 2009, Charlotte e-mailed Vice President a forwarding address for Defendants. Vice President replied by e-mail that the property was set for foreclosure on December 16, 2009. She also informed Charlotte that to stop the sale, Hammer would need to bring the note current by paying $7,371.37. Michael testified he had the money available but did not make the payment. Instead, Michael returned to Missouri, retrieved the November 20 letter and removed the remainder of Hammer's belongings from the property.

The foreclosure sale took place as scheduled, and Bank purchased the property, resulting in a deficiency due on the SBA loan of $389,277.13. Michael did not attend the foreclosure sale. Treadwell subsequently purchased the property from Bank. Hammer ceased its Missouri operations entirely in February 2010.

On February 11, 2010, Bank filed suit seeking to recover the deficiency due on the SBA loan plus interest. After trial, the court granted judgment in favor of Bank. This appeal followed.

## Point I: Successor Trustee

In their first point, Defendants argue the trial court misapplied the law when it entered judgment in favor of Bank because the foreclosure sale was void as Trustee had not been appointed in accordance with the terms of the deed of trust which required the appointment must be recorded. This argument is without merit.

As this point involves review of a court-tried civil matter, we "will sustain the judgment of the trial court 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Manard v. Williams*, 952 S.W.2d 387, 389 (Mo. App. S.D. 1997) (quoting *Gauzy Excav. & Grading Co. v. Kersten Homes, Inc.*, 934 S.W.2d 303, 304 (Mo. banc 1996)). "The trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness." *Pepsi Midamerica v. Harris*, 232 S.W.3d 648, 653 (Mo. App. S.D. 2007) (quoting *Schaefer v. Rivers*, 965 S.W.2d 954, 956 (Mo. App. S.D. 1998)). Furthermore, "[t]his Court does not defer to the trial court's determinations of law." *Id.*

"[T]he exercise of a power of sale contained in a deed of trust is 'a matter of contract between the mortgagor and mortgagee.'" *Winters v. Winters*, 820 S.W.2d 694, 697 (Mo. App. S.D. 1991) (quoting *Graham v. Oliver*, 659 S.W.2d 601, 603 (Mo. App. S.D. 1983)). Generally speaking, failure to follow fundamental procedural requirements will render a foreclosure sale void. *Manard*, 952 S.W.2d at 391. However, "[a]n irregularity in the execution of a foreclosure sale must be substantial or result in a probable unfairness to suffice

5

as a reason for setting aside a voidable trustee's deed." *Id.* (quoting ***Kennon v. Camp***, 353 S.W.2d 693, 695 (Mo. 1962)).

In this case the irregularity in the sale was not substantial because at the time of the sale, the appointment of successor trustee had been recorded as required by the deed of trust. The deed of trust contained a provision allowing appointment of a successor trustee which stated that "Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an Instrument executed and acknowledged by Lender and recorded in the office of the recorder of GREENE County, State of Missouri." On November 20, 2009, Bank executed its appointment of successor trustee appointing Trustee in place of Kim R. Moore, the original trustee named in the deed of trust. Publication of the notice of the trustee's sale began on November 24, 2009. The appointment of successor trustee was filed with the Greene County Recorder of Deeds on December 1, 2009. The trustee's sale of the property was conducted by Trustee as scheduled on December 16, 2009, and the real estate sold for $674,820. The trustee's sale was valid.

This Court's decision in ***Winters*** does not require a different conclusion. In ***Winters***, as in the present case, the deed of trust required a successor trustee to be appointed by a written instrument recorded with the recorder of deeds. 820 S.W.2d at 694-95. The successor trustee was appointed in writing, but that writing had not been recorded when the successor trustee proceeded to publish notice of the sale and to actually conduct the sale. *Id.* at 695-96. Only after both publication and the foreclosure sale had been completed was the written appointment of the successor trustee recorded. *Id.* at 696. This Court upheld

6

the trial court's determination that the foreclosure sale was void. *Id.* at 698-99. Here, in contrast, the appointment of successor trustee was recorded prior to the sale. Thus, in this case the terms of the deed of trust had been met at the time of the sale.

In that respect this case is more like ***Smith v. Equitable Life Assur. Soc. of U.S.***, 448 S.W.2d 588 (Mo. 1970). In that case, the original trustee published the notice of the foreclosure sale. *Id.* at 591. Subsequently, a successor trustee was appointed, and the foreclosure sale was conducted by the successor trustee. *Id.* The mortgagors sought to have the trustee's deed set aside, and one of their arguments on appeal was that the successor trustee could not conduct the foreclosure sale based on the original trustee's notice. *Id.* at 592. The Supreme Court of Missouri disagreed, holding "that a successor trustee may sell under a notice published by his predecessor." *Id.* at 592-93. The Court reached this result in part because, despite the irregularity in the publication of the notice, "the purpose to be served by the publication of a notice of trustee's sale [was] accomplished." *Id.* at 593. Here, too, the notice served its purpose, and Trustee was properly appointed at the time of the sale.

This conclusion is further supported by ***Petring v. Kuhs***, 171 S.W.2d 635 (Mo. 1943). In that case, the mortgagors challenged the foreclosure sale because the notice had been signed and published by the attorney for the trustee rather than by the trustee himself. *Id.* at 638. The Court held the failure of the trustee himself to sign and post the notice did not invalidate the sale where the trustee himself conducted the sale. *Id.* Here, similarly, the notice was signed and posted by one who arguably did not have authority to do so, *i.e.*, Trustee prior to his

7

appointment in accordance with the terms of the deed of trust. However, Defendants had actual notice of the sale and Trustee had been properly appointed when he conducted the foreclosure sale. Consequently, the foreclosure sale was valid.

The foreclosure sale was not invalid based on the fact that Trustee's appointment had not been recorded at the time the initial notice of sale was published and mailed to Defendants. Defendants' first point is denied.

### Point II:  Notice of Right to Cure

In their second point, Defendants argue the trial court's finding that Bank was not required to provide a notice of right to cure prior to the foreclosure is against the weight of the evidence. In support, Defendants point to a notice of right to cure provision in the deed of trust and to other facts suggesting the foreclosure was based on defaults other than a payment default. This argument ignores the standard of review.

As stated above, "[i]n a court-tried case, such as this, the appellate court will sustain the judgment of the trial court 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Manard*, 952 S.W.2d at 389 (quoting *Gauzy*, 934 S.W.2d at 304). "The trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness." *Harris*, 232 S.W.3d at 653 (quoting *Schaefer*, 965 S.W.2d at 956). "Due regard is given to the opportunity of the trial court to have judged the credibility of witnesses." *Manard*, 952 S.W.2d at 389.

8

The following additional facts are pertinent to the resolution of this claim. In the event of a default, the SBA loan permitted Bank to exercise its remedial rights without providing notice or demand. In contrast, the deed of trust contained the following provision:

> Right to Cure. If any default, *other than a default in payment* is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding one (1) month, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

(Emphasis added). The trial court found there was a default in payment and no notice of the right to cure was required. In fact, Defendants do not contend the above provision required notice of right to cure in a case involving a default in payment. Consequently, the only issue presented by this point is whether the trial court's finding that there was a default in payment was against the weight of the evidence.

Analysis of this question must begin with the proposition that "[t]he trial court's judgment is presumed valid and the burden is on the appellant to demonstrate its incorrectness." **Houston v. Crider**, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010) (quoting **Bowles v. All Counties Inv. Corp.**, 46 S.W.3d 636, 638 (Mo. App. S.D. 2001)). "[W]eight of the evidence refers to weight in probative value, not quantity or the amount of evidence." **Id.** (quoting **Gifford v. Geosling**, 951 S.W.2d 641, 643 (Mo. App. W.D. 1997)). "Although consideration of probative value necessarily involves some consideration of

9

evidence contrary to the judgment, we nevertheless 'defer to the trial court as the finder of fact in our determination as to whether . . . that judgment is against the weight of the evidence." **Id.** (quoting **Wildflower Cmty. Ass'n, Inc. v. Rinderknecht**, 25 S.W.3d 530, 536 (Mo. App. W.D. 2000)). "A court will set aside a judgment as 'against the weight of the evidence' only when it has a 'firm belief that the judgment is wrong.'" **Id.** (quoting **Gifford**, 951 S.W.2d at 643). Furthermore,

> an against-the-weight-of-the-evidence challenge requires completion of four sequential steps:
>
> (1)     identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2)     identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3)     identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4)     demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

**Id.**

Here, the trial court made a finding of a default in payment. That finding was not against the weight of the evidence. Michael testified that Defendants never made the November 16, 2009 payment. Both the deed of trust and the SBA loan provide Defendants would be in default if they failed to make a payment when due. Defendants do not point to any contrary evidence showing the

10

November 16 payment was made.  As there is no evidence contrary to the trial court's finding, the trial court's finding is not against the weight of the evidence.

Defendants implicitly recognize this, so their argument under this point primarily involves attempting to change the facts found by the trial court. Defendants begin their argument under this point by stating facts contrary to the judgment which would support a finding that Bank declared a default on some other basis other than a payment default.  From their facts, Defendants suggest the trial court's finding of a payment default was incorrect.  Then, based on the conclusion that the default prompting the foreclosure was a default other than a default in payment, they argue the trial court misapplied the law because the defaults, other than the payment default, required notice of right to cure under the terms of the deed of trust.  That is, the argument depends on the faulty premise that the trial court based the default on something other than a default in payment, which is incorrect.

The trial court did find a default in payment, and there is no evidence showing the November 16 payment was ever made.  The trial court's finding that no notice of right to cure was required was not against the weight of the evidence. Defendants' second point is denied.

### Point III:  Alleged Grace Period

In their third point, Defendants argue the trial court misapplied the law in that a subsequent modification to the original loan agreement created a ten-day grace period for payments.  The trial court did not agree, nor do we.  This argument ignores the plain language of the relevant documents.

11

The following additional facts are necessary to analyze this point. The parties agreed that the payments were due on the sixteenth of each month. Additionally, the note provided that a default occurred "if Borrower does not make a payment when due under this Note[.]" The note contained no provisions regarding a grace period for payments. On July 16, 2008, Bank entered into a Loan Modification Agreement with Hammer and South Creek. That agreement provided that "Section 3, PAYMENT TERMS, Subsection 2, Repayment Terms, is hereby amended to provide as follows: If a payment on this Note is more than 10 days late, Lender *may* charge Borrowers a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment." (Emphasis added). Defendants contend this provision created a grace period. The issue presented in this point, then, is whether a contractual provision in a loan document stating a lender may charge a late fee if periodic payments are tendered after their due date creates a grace period in which the lender is prevented from declaring a default.

This issue requires interpretation of the parties' contracts. "Construction of a contract is generally a question of law." *Harris*, 232 S.W.3d at 654. "This Court does not defer to the trial court's determinations of law." *Id.* at 653. "Where the terms of the contract are clear, this Court does not supply additional terms, but applies the agreement as written." *Brewer v. Devore*, 960 S.W.2d 519, 522 (Mo. App. S.D. 1998) (quoting *Wintermute v. Delgado*, 919 S.W.2d 248, 250 (Mo. App. S.D. 1996)). "It is not within the province of the court to alter a contract by construction, or to make a new contract for the parties." *Harris*, 232 S.W.3d at 654-55 (quoting *Textor Const., Inc. v. Forsyth R-III School Dist.*, 60 S.W.3d 692, 697 (Mo. App. S.D. 2001)). "The terms of a contract are

12

read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Id.* at 655.

In the present case, there is nothing ambiguous about the terms of repayment. Payments were due on the sixteenth of the month. A default occurred when payments were not tendered when due. Nothing in the plain language of the modification altered the conditions constituting default. The modification simply allowed Bank the latitude to charge a late fee if it decided to accept a late payment but was not required to do so. To imply a grace period from the language of the loan modification agreement would be to make a new contract for the parties.

The trial court did not err in determining the loan modification agreement did not create a grace period. Point III is denied.

## Point IV: Wrongful Foreclosure

In their fourth point, Defendants contend the trial court erred in denying South Creek's cross claim for wrongful foreclosure. This argument is without merit because South Creek failed to prove it was not in default on the note.

As above, we review the trial court's decision to determine whether the trial court misapplied the law or whether the trial court's decision is not supported by substantial evidence or whether the trial court's decision is against the weight of the evidence. *Manard*, 952 S.W.2d at 389. "An action in wrongful foreclosure for damages lies only where the mortgagee does not have the right to foreclose at the time the foreclosure proceedings were commenced." *Reliance Bank v. Musselman*, 403 S.W.3d 147, 149 (Mo. App. E.D. 2013). Thus, to obtain relief a party seeking damages for wrongful foreclosure must plead and

13

prove it was not in default at the time the foreclosure proceedings were commenced.  *Id.*

In the present case, the SBA loan and the deed of trust both provided a default occurred if any payment was not made when due.  The November 16, 2009 payment was not timely made and, in fact, was never made.  The foreclosure proceedings began on November 20, 2009.  South Creek failed to prove that at the time the foreclosure proceedings began it was not in default.  Consequently, the trial court did not err in denying the claim for wrongful foreclosure.

In support of their conclusion to the contrary, Defendants incorporate the arguments made in Point II (Defendants were entitled to notice of the right to cure) and Point III (the creation of a grace period).  As discussed above, these arguments are without merit.

The trial court did not err in denying South Creek's counter claim for wrongful foreclosure.  Defendants' fourth point is denied.

### Point V:  Bona Fide Purchaser for Value

In their final point, Defendants contend the trial court's entry of summary judgment in favor of Treadwell was erroneous because Treadwell was not a bona fide purchaser for value.  In support, Defendants note that all the documents supporting their arguments in Point I were part of the recorded chain of title and thus Treadwell was deemed to have constructive notice of the fact that the foreclosure sale was void.  This Court need not reach the merits of the claim.  As the foreclosure sale was valid, Treadwell's purchase from Bank was valid, and any

14

issue as to whether Treadwell is a bona fide purchaser is moot. Defendants' fifth point is denied.

## Decision

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. - OPINION AUTHOR

JEFFREY W. BATES, P.J. - CONCURS

GARY W. LYNCH, J. - CONCURS