

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| BELLEMEADE HOMEOWNERS ASSOCIATION, | ) | No. ED112825 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | Cause No. 2211-CC00365 |
| | ) | |
| TYLER TAYLOR, ET AL., | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Respondents. | ) | Filed: July 8, 2025 |

### Introduction

Bellemeade Homeowners Association ("Bellemeade") appeals from the judgment of the trial court in favor of Tyler Taylor, Shana Taylor, (collectively, the "Taylors") and intervenor Andrew Gilfoil[1] ("Gilfoil") on its declaratory judgment and breach of contract claims as well as the Taylors on their counterclaim for declaratory judgment. Bellemeade raises two points on appeal. In Point I, Bellemeade argues the trial court erred in concluding the fencing restriction in its Declaration of Trust and Restrictions (the "Declaration") is ambiguous and unenforceable when applied to the Taylors' property because the restriction makes clear the "[f]encing must start at the rear corners of the residence constructed." Point II contends the trial court erred in concluding Bellemeade waived the fencing restriction because the Declaration provides Bellemeade's

---

[1] Gilfoil did not file an appeal and, therefore, we only reference the Taylors in our analysis. However, Gilfoil is still bound by this decision.

decision not to enforce a restriction shall not be construed as a waiver of its right to enforce the restriction at a later time.

We grant both points. This Court holds the Declaration unambiguously requires fencing to start at the rear corners of the Taylors' residence. We further hold the plain language of the Declaration preserves Bellemeade's right to enforce the fencing restriction.[2]

Accordingly, the judgment of the trial court is reversed.

## Factual and Procedural Background

Bellemeade is a homeowners' association that maintains and manages a platted subdivision in St. Charles County, Missouri (the "subdivision"). Its Declaration contains covenants and restrictions that apply to homeowners' properties within the subdivision and authorizes Bellemeade to bring suit to enforce the Declaration's provisions. The Declaration also provides "[t]he decision to pursue enforcement in any particular case shall be left to [Bellemeade's] discretion" and "[a] decision not to enforce shall not be construed a waiver of the right of [Bellemeade] to enforce such provision at a later time[.]"

The Taylors' property is within the subdivision and is surrounded by Harding Street to the front, Bellemeade Drive to the side, and Grand Teton Drive to the rear. On April 16, 2020, pursuant to the terms of the Declaration, the Taylors sought permission from Bellemeade to construct a fence that would enclose the side yard of their property along Bellemeade Drive. Bellemeade denied the Taylors' application because it did not comply with the Declaration's terms. The

---

[2] Bellemeade filed a motion for attorney's fees incurred in this appeal, which this Court took with the case. Regarding attorney's fees, the Declaration provides: "[i]n any action to enforce this Declaration, if [Bellemeade] prevails, it shall be entitled to recover all costs, including, without limitation, attorney[']s fees and court costs, reasonably incurred in such action." As the prevailing party, Bellemeade is entitled to attorney's fees. Although this Court has "the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Sprint Lumber, Inc. v. Union Ins. Co*., 627 S.W.3d 96, 124 (Mo. App. W.D. 2021) (quoting *Berry v. Volkswagen Grp. of Am., Inc*., 397 S.W.3d 425, 433 (Mo. banc 2013)). Hence, on remand, the trial court will need to determine the reasonableness of Bellemeade's request for attorney's fees on appeal.

Taylors subsequently requested a variance, which was also denied. Notwithstanding, the Taylors erected the fence. The fence enclosed their rear yard along Grand Teton Drive and a portion of their side yard along Bellemeade Drive. On the Bellemeade Drive side of the house, the fence attaches to the house at or near the front building line of the home.

In response, on April 21, 2022, Bellemeade filed suit against the Taylors for declaratory judgment and breach of contract. On September 12, 2022, Gilfoil filed a motion to intervene as he possessed an interest in similarly situated property. Specifically, Gilfoil owns property directly across from the Taylors and his fence also attaches on one side of the home at or near the front building line. The trial court granted his motion. Thereafter, the Taylors brought a counterclaim for declaratory judgment.

The matter proceeded to a bench trial on November 16, 2023. After the close of evidence, the trial court ruled in favor of the Taylors and Gilfoil on Bellemeade's declaratory judgment and breach of contract claims. The trial court also ruled in favor of the Taylors on their counterclaim. In reaching its decision, the trial court found "[t]he Declarations are ambiguous when applied to the Defendants' Lot, which is neither a standard Lot nor a corner Lot, and the law of this state compels this Court to interpret the Declarations narrowly, to permit rather than restrict the free use of Defendants' property." The trial court also found Bellemeade's failure to enforce the Declaration's fencing restriction on other lots constituted waiver or abandonment of the restriction.

This appeal follows.[3]

## Standard of Review

When reviewing a court-tried case, "[a]n appellate court must sustain the decree or judgment of the [trial] court unless there is no substantial evidence to support it, unless it is against

---

[3] Additional facts relevant to this appeal will be set forth as necessary in the discussion section below.

the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Millstone Prop. Owners Ass'n v. Nithyananda Dhyanapeetam of St. Louis*, 701 S.W.3d 633, 640 (Mo. banc 2024) (citation omitted). "The interpretation of a restrictive covenant is a question of law and as such is to be reviewed *de novo* on appeal." *Dash v. Taylor*, 668 S.W.3d 580, 584 (Mo. App. E.D. 2023).

**Discussion**

Point I

In Point I, Bellemeade argues the trial court erred in finding the Declaration's fencing restriction is ambiguous when applied to the Taylors' property. This Court agrees and holds the Declaration unambiguously requires fencing to start at the rear corners of the homeowner's residence.

The Declaration at issue is a contract. *See Arrowhead Lake Ests. Homeowners Ass'n, Inc. v. Aggarwal*, 624 S.W.3d 165, 167 (Mo. banc 2021). "Accordingly, contract law principles apply when interpreting the Declaration." *Id.* "The cardinal rule for … interpreting a contract … is to effectuate the parties' intent at the time of contracting." *Behrick v. Konert Farms Homeowners' Ass'n*, 601 S.W.3d 567, 573 (Mo. App. E.D. 2020) (citation omitted). "To ascertain the parties' intent, contract language is given its plain, ordinary, and usual meaning." *Aggarwal*, 624 S.W.3d at 167. "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable [persons] may fairly and honestly differ in their construction of the terms." *Behrick*, 601 S.W.3d at 573 (citation omitted). "[T]he courts are not commissioned to hunt out a way to defeat [a restrictive] covenant." *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 280 (Mo. banc 2019) (citation omitted). "Absent ambiguity, courts will not resort to any canons of construction, and the contract will be enforced as written." *Behrick*, 601 S.W.3d

4

at 573. "An ambiguity does not exist merely because the parties dispute the meaning of the contract." *Id.* (citation omitted).

"Restrictive covenants on realty are strictly construed as the law favors untrammeled use of real estate." *Dash*, 668 S.W.3d at 584 (citation omitted). "Strict construction should never be applied in such a way as to defeat the plain purpose of the restriction." *Trs. of Clayton Terrace Subdivision*, 585 S.W.3d at 280 (internal quotations and citation omitted). As such, "we cannot give the declaration … a broader application than is warranted by its plain and unambiguous terms, and we cannot presume anything that is not expressed by the declaration." *Haines v. Branson Cabin Rentals, LLC,* 635 S.W.3d 172, 174 (Mo. App. S.D. 2021) (citation omitted).

On appeal, Bellemeade contends the fencing restriction "plainly and categorically provides that fencing on any lot in the [s]ubdivision must start at the 'rear corners' of the residence constructed on the lot." Conversely, the Taylors assert their property is unique in the sense it was "neither a traditional facing-a-single-street Lot nor a bounded-by-two-streets corner Lot." As such, they argue the fencing restriction was ambiguous when applied to their lot, and urge this Court to construe the provisions in their favor due to the ambiguity.

Here, the fencing restriction in the Declaration provides:

> Fencing shall only enclose the rear yards of **any** residence. Rear yard fencing shall be full perimeter and no fencing shall be erected or maintained on **any** Lot between the rear of the residence constructed upon such Lot and the street upon which such Lot fronts. Fencing must start at the rear corners of the residence constructed. Fencing must be within four inches (4") of the Lot lines and Lot corners. With respect to corner lots, fencing along the side of the rear yard facing the street shall not be placed any nearer to said street than four inches (4") of the building line limit established by the subdivision plat.

(emphasis added).

Contrary to the Taylors' argument on appeal, the plain and ordinary language of the provision is not susceptible to more than one meaning. *See Behrick*, 601 S.W.3d at 573. Thus, the

fencing restriction is unambiguous and we must enforce the language as written. *See id.* The Declaration's plain language states that "[f]encing must start at the rear corners of the residence constructed." This provision applies to "any" lot and does not carve out any exceptions. It is clear that, regardless of the type of lot owned, nothing within the Declaration's requirement that fencing must commence at the rear corner of a residence is ambiguous. The Taylors cannot attempt to brand their lot as "unique" to circumvent the Declaration. It is noteworthy the Taylors sought permission to erect their fence where they wanted and Bellemeade denied their request twice. Nevertheless, the Taylors erected a fence that did not start at the rear corner of their residence. The Taylors' actions support they were well aware of the fencing restriction and had ample notice the construction of their fence would be in direct violation of the Declaration.

Furthermore, the Taylors' interpretation of the Declaration would require this Court to give expansive meaning to the Declaration by adding language in order to create an exception for their "unique lot." This Court, however, "cannot presume anything that is not expressed by the [D]eclaration." *Haines*, 635 S.W.3d at 174 (citation omitted); s*ee also Trs. of Clayton Terrace Subdivision*, 585 S.W.3d at 280; *Pepsi Midamerica v. Harris*, 232 S.W.3d 648, 655 (Mo. App. S.D. 2007) ("A court's duty is confined to the interpretation of the contract which the parties have made for themselves …, and a court may not read into a contract words which the contract does not contain." (citation omitted)).

The Taylors rely on *Dash v. Taylor*, and point out that this Court, "interpreting the Declarations in light of the public policy and the law that favors the free and unrestricted use of property," affirmed the trial court's judgment finding the homeowner's construction of a trash enclosure was permitted under the subdivision's declarations. 668 S.W.3d at 585. The Taylors are correct that in *Dash*, this Court made clear that restrictive covenants will be read narrowly in favor

of the free use of property when there is any ambiguity or substantial doubt as to the covenants'

meaning. *Id.* at 586. However, the Taylors selectively read a portion of the case and ignore that

this Court also stated "when interpreting [restrictive] covenants, **courts should give effect to the**

**intent of the parties as expressed in the plain language of the covenant**[.]" *Id.* (emphasis added)

(citation omitted). Given there is no ambiguity about where the fencing must start in the present

matter, the Taylors' reliance on *Dash* is misplaced.

The Taylors agreed to the terms of the restrictive covenant when they acquired property

within the subdivision and Bellemeade had the authority to enforce the restriction on the Taylors'

use of their property. *See Lake Arrowhead Prop. Owners Ass'n v. Bagwell*, 100 S.W.3d 840, 843–

44 (Mo. App. W.D. 2003) (stating a homeowner becomes subject to the homeowner association's

enforcement of its indenture of trusts and restrictions when they acquire property in the

homeowner association's subdivision). Therefore, this Court holds the Declaration is unambiguous

when applied to the Taylors' property.

Point I is granted.

### Point II

In Point II, Bellemeade argues the trial court erred in concluding Bellemeade waived the

Declaration's fencing restriction because the Declaration contains an enforceable anti-waiver

provision. The Taylors counter Bellemeade waived enforcement of the fencing restriction because

there are approximately seven properties within the subdivision whose fences do not conform with

the restriction. This Court holds the Declaration preserves Bellemeade's right to enforce the

restrictions regardless of the fact the restrictions were not strictly enforced in the past.

The Supreme Court of Missouri recently analyzed a similar issue regarding waiver of a

subdivision's restrictions in *Millstone Prop. Owners Ass'n v. Nithyananda Dhyanapeetam of*

*St. Louis*, 701 S.W.3d at 644. In *Millstone*, the property owner argued the association's failure to enforce the subdivision's recorded restriction to maintain the lot for single-family residential usage resulted in abandonment of the restriction. *Id.* Specifically, the restrictions provided "[f]ailure or forbearance to enforce any covenant or restriction shall not be deemed a waiver of the right to do so thereafter", "[n]or shall the failure to enforce a covenant or agreement herein act as a waiver or prohibit the enforcement of same in the future." *Id.* The Supreme Court of Missouri held the plain language of the restrictions preserved the association's right to enforce any covenants even if certain provisions were not strictly enforced in the past. *Id.*

Here, the Declaration contains similar language to the restrictions considered by the Supreme Court of Missouri in *Millstone*. Similarly to the provisions discussed above in *Millstone*, the Declaration provides:

> The decision to pursue enforcement in any particular case shall be left to [Bellemeade's] discretion. A decision not to enforce shall not be construed a waiver of the right of [Bellemeade] to enforce such provision at a later time under other circumstances or preclude [Bellemeade] from enforcing any other covenant, restriction or rule.

This Court is "constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court…." *Boles v. City of St. Louis*, 690 S.W.3d 592, 606 (Mo. App. E.D. 2024) (citation omitted). As in *Millstone*, where the property owner argued the association's failure to enforce the restriction resulted in its abandonment, the Taylors assert Bellemeade waived the fencing restriction by failing to consistently enforce it throughout the subdivision. Like in *Millstone*, where the provisions expressly preserved the association's right to enforce the subdivision's restrictions, here, the Declaration contains a non-waiver clause. Thus, this Court holds the plain language of the Declaration explicitly preserves Bellemeade's right to enforce the Declaration's fencing restriction. *See Millstone Prop. Owners Ass'n*, 701 S.W.3d at 644. Accordingly, the trial court

erred in concluding Bellemeade waived its right to enforce the fencing restriction even though it was not consistently enforced.

Point II is granted.

## Conclusion

The trial court's judgment is reversed and remanded for further proceedings consistent with this opinion, including awarding Bellemeade the reasonable attorney's fees and court costs it incurred throughout this appeal.

_____
Michael S. Wright, Judge

John P. Torbitzky, C.J. and
Robert M. Clayton III, J. concur.